**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| GENERAL VIDEO, LLC,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>LENOVO GROUP LIMITED, LENOVO PC HK LIMITED, LENOVO (SHANGHAI) ELECTRONICS TECHNOLOGY CO. LTD., LENOVO INFORMATION PRODUCTS (SHENZHEN) CO. LTD., LCFC (HEFEI) ELECTRONICS TECHNOLOGY CO., LTD., LENOVO CENTRO TECHNOLÓGICO S. DE R.L. DE C.V., LENOVO (BEIJING) LIMITED, LENOVO (THAILAND) LIMITED, MOTOROLA MOBILE COMMUNICATION TECHNOLOGY LTD., MOTOROLA (WUHAN) MOBILITY TECHNOLOGIES COMMUNICATION COMPANY LIMITED, and FUJITSU CLIENT COMPUTING LIMITED,<br><br>　　　Defendants. | Civil Action No. 1:25-cv-2143<br><br>**JURY TRIAL DEMANDED** |

<u>**COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff, General Video, LLC ("General Video" or "Plaintiff"), for its Complaint against Defendants, Lenovo Group Limited, Lenovo PC HK Limited, Lenovo (Shanghai) Electronics Technology Co. Ltd., Lenovo Information Products (Shenzhen) Co. Ltd., LCFC (Hefei) Electronics Technology Co., Ltd., Lenovo Centro Tecnológico S. De R.L. De C.V., Lenovo (Beijing) Limited, Lenovo (Thailand) Limited, Motorola Mobile Communication Technology Ltd., Motorola (Wuhan) Mobility Technologies Communication Company Limited, and Fujitsu

Client Computing Limited (collectively, the "Lenovo Defendants" or "Defendants"; collectively, Defendants other than Lenovo Group Limited are "Codefendants"), alleges as follows:

## THE PARTIES

1.      General Video is a limited liability company organized and existing under the laws of the State of Delaware and with an address at 8 The Green, Suite B, Dover, DE 19901.

2.      Defendant Lenovo Group Limited ("LGL") is a corporation organized and existing under the laws of the People's Republic of China, with an address at 23rd Floor, Lincoln House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong S.A.R., China. LGL may be served with process pursuant to the provisions of the Hague Convention. LGL may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of the business in which LGL engages in Texas.

3.      LGL is the parent company of a multinational conglomerate and is a global leader in the personal and business computer market. In 2024, Lenovo was the world's largest supplier of personal computers – accounting for more than a quarter of global shipments of such products.[1] LGL and its subsidiaries – to which the company refers collectively as "Lenovo or 'Lenovo Group' or the 'Group'"[2] – have a global reach and a strong presence in the United States. "Lenovo is listed on the Stock Exchange of Hong Kong under Lenovo Group Limited" (i.e., the first-named Defendant above) (*see* n.2 *supra*), is "ranked at 217 in the Fortune Global 500, … [and] employs

---

[1] *See e.g.,* https://www.gartner.com/en/newsroom/press-releases/2025-01-15-gartner-says-world wide-pc-shipments-increased-1-point-4-percent-in-fourth-quarter-of-2024.

[2] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 1 (PDF p. 4/60); *see also* https://investor.lenovo.com/en/global/home.php.

77,000 people worldwide[3] – including more than 5,000 in the United States[4] –, and serves millions of customers in 180 markets (*see* n.2 *supra*). On information and belief, many of Lenovo's U.S. employees are involved with management, design, engineering, marketing, and supply chain functions. In 2025 (for the year ended March 31), Lenovo's revenue was US$69 billion,[5] of which US$23.3  billion derived from the Americas.[6] On information and belief, a substantial portion of Lenovo's revenue from its operations in the Americas is generated in the United States.

4.       LGL, acting directly, through, and in concert with subsidiaries, affiliates, or intermediaries, including but not limited to LGL's Codefendants named herein, some or all of which are LGL's agents or alter egos, manufactures, offers to sell, and sells worldwide, including to customers and potential customers located throughout the United States, within Texas, and in this District, laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and mobile phones, including those accused herein of infringement. As just one example of many instances of LGL's purposeful placement of products into the stream of commerce with the expectation and knowledge such products would be distributed throughout the U.S., LGL has admitted that it purchased Codefendant Lenovo PC HK Limited in order to enter the U.S. market.[7]

---

[3] https://www.lenovo.com/us/en/about/.

[4] *See, e.g.,*https://www.crn.com/news/computing/2025/lenovo-cuts-3-percent-of-us-workforce#:~:text=%5BRELATED:%20Lenovo%20Grows%20Annual%20Sales,5%2C000%E2%80%9D%20U.S.%2Dbased%20employees.

[5] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 1 (PDF p. 4/60).

[6] *Id.* at 188 (PDF p. 48/60).

[7] *See ACQIS LLC v. Lenovo Group Ltd.*, 572 F. Supp. 3d 291, 305-06 (W.D. Tex. 2021) (quoting LGL's Rule 30(b)(6) testimony concerning LGL's rationale for purchasing Lenovo PC HK Limited ("Q: Is that what caused Lenovo to enter the U.S. market or was there some other reason in 2005? ... A: I believe this is the reason. I don't know of any other reasons.") (citing No. W-20-cv-00967-ADA (W.D. Tex.), ECF Nos. 75-1 at 6 and 74-2 at 12 (sealed)). *See also* Ex. 16 hereto,

5.      The concerted action between LGL and its numerous subsidiaries, including LGL's Codefendants named herein, is so deep, and the degree of control LGL asserts over such subsidiaries and codefendants is so dominant, that there is no practical distinction between LGL and its subsidiaries – as discussed above, they operate as a single entity called "Lenovo," "Lenovo Group," or the "Group." LGL's annual reports hold the Group out as a single company *hundreds* of times.[8] The Lenovo.com website also presents Lenovo as a single entity, uses the tagline "One Purpose. *One Lenovo.*" on the site's "About Lenovo" page,[9] identifies the leadership of "Lenovo" as officers of the Group – which, again, includes LGL *and* its subsidiaries –,[10] states that "*Lenovo is incorporated and listed in Hong Kong SAR, China, with headquarters in Beijing, China, and North Carolina, USA,*"[11] and identifies eight U.S.-based "Worldwide Sales Office Locations," including one in Fort Worth, Texas.[12] In LGL's 2024/25 Annual Report, Yuanqing Yang, Chairman and CEO of LGL,[13] referred to the "diverse and unified *One Lenovo* team around the

---

No. W-20-cv-00967-ADA (W.D. Tex.), Tahdooahnippah Decl. in Supp. of ACQIS's Opp'n to LGL's Mot. to Dismiss ¶ 3 (verifying sealed copy of Rule 30(b)(6) deposition of LGL from which the quote above derives).

[8] *See, e.g.,* Ex. 7 hereto at 16 (PDF p. 19/60) ("For the fiscal year ended March 31, 2025, Lenovo (*the Group*) delivered solid financial results.") (emphasis added) (also note 108 references to "the Group" in just the first 100 pages of the 2024/25 Annual Report).

[9] https://www.lenovo.com/us/en/about/ (emphasis added).

[10] https://www.lenovo.com/us/en/about/who-we-are/our-leadership/?orgRef=https%253A%252F%252Finvestor.lenovo.com%252F.

[11] https://www.lenovo.com/us/en/about/locations/ (emphasis added).

[12] *Id.*

[13] *See, e.g.,* Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 144 (PDF p. 39/60) ("Mr. Yang Yuanqing, 60, is the Chairman of the Board, Chief Executive Officer and an executive director of *the Company*.") (emphasis added); *id.* at 1 (PDF p. 4/60) ("Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group.").

world,"[14] echoing the company's "One Lenovo" tagline.[15] The deep concerted action between LGL and its numerous subsidiaries, including LGL's Codefendants named herein, and the dominant degree of control LGL asserts over such subsidiaries and Codefendants, in implementing the Group's "unified One Lenovo" business operation and in presenting that unified business operation to the worldwide and U.S. marketplaces is also demonstrated by the following description from LGL's 2024/25 Annual Report:

> Lenovo Group Limited (the "Company") and its subsidiaries (together, the "Group") develop, manufacture and market reliable, high-quality, secure and easy-to-use technology products and services. Its product lines include legendary Think-branded commercial personal computers and Idea-branded consumer personal computers, as well as servers, workstations, and a family of mobile internet devices, including tablets and smartphones.[16]

This statement confirms the obvious: LGL is ultimately responsible for, directs, and controls, and acts in concert with its subsidiaries, including its Codefendants named herein, with respect to, the "develop[ment], manufacture and market[ing]" of Lenovo- and Motorola-branded products, including infringing products complained of herein.

6.    The deep concerted action between LGL and its numerous subsidiaries, including LGL's Codefendants named herein, and the dominant degree of control LGL asserts over such subsidiaries and codefendants, is not only demonstrated by the "unified One Lenovo" identity with which the Group presents itself to the worldwide and U.S. marketplaces but is also *required* by the "Corporate governance principles and structure" by which LGL and the Group it controls strictly abide. *First*, Mr. Yang, Chairman and CEO of LGL, directly leads the operations of not just LGL

---

[14] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 11 (PDF p. 14/60) (emphasis added).

[15] *See, e.g.,* https://www.lenovo.com/us/en/about/ ("One Purpose. *One Lenovo.* Smarter Technology for All.") (emphasis added).

[16] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 179 (PDF p. 43/60).

but also the operations of its numerous subsidiaries – including but not limited to LGL's codefendants named herein – i.e., collectively, "the Group."[17] For example, LGL's 2024-2025 Annual Report explains:

> The Board has reviewed the organization human resources planning of *the Group* and is of the opinion that for [sic] the vesting of the roles of Chairman and the CEO [of LGL] in Mr. Yang Yuanqing ("Mr. Yang") *is appropriate and beneficial to the Group* as it provides consistency of the strategy execution and stability of the operations of *the Group*. The Board comprising a majority of independent non-executive directors meets regularly on a quarterly basis to review *the operations of the Group led by Mr. Yang*.[18]

*Second*, Mr. Yang, in directly leading the operations of not just LGL but also the operations of its numerous subsidiaries – including but not limited to LGL's codefendants named herein – i.e., collectively, "the Group,"[19] "manages the business [of the Group] in line with the strategy agreed by the Board"[20] and

- "Formulates and recommends the strategy of the Group to the Board

- Executes the strategy [of the Group] agreed by the Board

- Makes and implements operational decisions and manages the business [of the Group] day-to-day

- Leads the business and the management team"[21]

*Third*, Mr. Yang, in directly leading the operations of LGL *and* its numerous subsidiaries – including but not limited to LGL's Codefendants named herein – i.e., collectively, "the Group,"[22] "is supported by *the Lenovo Executive Committee*, which is a management committee comprising the CEO

---

[17] *See, e.g., id.* at 59 (PDF p. 32/60), *Corporate governance principles and structure*.

[18] *Id.* (parenthetical in original) (emphasis added).

[19] *Id.*

[20] *Id.* at 60 (PDF p. 33/60).

[21] *Id.* at 62 (PDF p. 35/60).

[22] *Id.* at 59 (PDF p. 32/60).

and *all senior management* and helps to implement strategy and manage operational performance" of the Group.[23] *Fourth*, as shown below in the excerpt of an organizational chart from LGL's 2024/25 Annual Report, every member of the Lenovo Executive Committee other than Mr. Yang – i.e., "all senior management" of Lenovo – support and report directly to Mr. Yang as CEO of LGL:



*See* n.21 *supra* (yellow highlighting added). *Fifth*, as discussed in paragraph 7 below, Lenovo specifically identifies all members of Lenovo's senior management, each of whom support and report directly to Mr. Yang as CEO of LGL, as officers and managers of "the Group," which includes LGL and its subsidiaries.

7.    Several of the executive officers and senior management who support and report directly to Mr. Yang as CEO of LGL – identified as "Leadership,"[24] members of the "Lenovo management team,"[25] and "senior management" [26] *of the Group*" (*id.* n.24 (emphasis added)) – work from and reside in the United States, including in Texas. For example, Matthew Zielinski, "Executive Vice President *of the Group* and President of the International Sales Organization *of*

---

[23] *Id.* at 60 (PDF p. 33/60) (emphasis added).

[24] https://www.lenovo.com/us/en/about/who-we-are/our-leadership/?orgRef=https%253A%252F%252Finvestor.lenovo.com%252F.

[25] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 12-13 (PDF pp. 15-16/60).

[26] *Id.* at 148-50 (PDF pp. 40-42/60).

*the Group*" (*see* n.24 *supra* (emphasis added); *see also* n.23 *supra*), "the leader of *Lenovo's* International Sales Organization since 2021" (*see* n.22 *supra* (emphasis added)), and a member of "senior management" (*see* n.24 *supra*), resides in Austin, Texas.[27] Ashley Gorakhpurwalla, "Executive Vice President of *the Group*, President of the Infrastructure Solutions Group (ISG)[,]" (*see* n.24 *supra* (emphasis added); *see also* nn.22-23 *supra*), "a member of *Lenovo's* Executive Committee" (*see* n.23 *supra* (emphasis added)), and a member of "senior management" (*see* n.24 *supra*), resides in Austin, Texas.[28] Dave Carroll, "Senior Vice President *of the Group* and the Chief Legal and Corporate Responsibility Officer ('CLO') for *the Group's* legal, IP, government relations, and ESG matters globally" (*see* n.24 *supra* (emphasis added); *see also* nn.22-23 *supra*), and a member of "senior management" (*see* n.24 *supra*), resides in Lake Zurich, Illinois.[29] Tolga Kurtoglu, "Senior Vice President, Chief Technology Officer[,] and Lenovo Technology Committee Vice-Chair *of the Group*[,]" (*see* n.24 *supra* (emphasis added), a "*Lenovo* Executive Committee member … [who] leads *Lenovo's* corporate technology strategy and R&D planning & governance" (*see* nn.22-23 *supra* (emphasis added)), is a member of "senior management" (*see* n.24 *supra*), and resides in the San Francisco Bay Area.[30] Doug Fisher, "*Lenovo's* Senior Vice President and Chief Security and AI Officer" (*see* n.22 *supra* (emphasis added)), resides in Henderson, Nevada.[31] Arthur Hu, "*Lenovo's* Global CIO" (*see* n.22 *supra* (emphasis added)),

---

[27] Ex. 8 hereto, Matthew Zielinski's LinkedIn Profile; *see also* https://www.linkedin.com/in/matthew-zielinski/.

[28] Ex. 9 hereto, Ashley Gorakhpurwalla's LinkedIn Profile; *see also* https://www.linkedin.com/in/ashley-gorakhpurwalla-b602b2b/.

[29] Ex. 10 hereto, David Carroll's LinkedIn Profile; https://www.linkedin.com/in/david-carroll-013464/.

[30] Ex. 13 hereto, Tolga Kurtoglu's LinkedIn Profile; https://www.linkedin.com/in/tolga-kurtoglu/.

[31] Ex. 11 hereto, Doug Fisher's LinkedIn Profile; https://www.linkedin.com/in/doug-fisher-8534092/.

resides in Seattle, Washington.[32] According to the definitions LGL presents to the world in its 2024/25 Annual Report, each of the senior managers of *the Group* identified above, acting in their respective leadership and management roles with *the Group*, serve in those roles as leaders and managers of LGL *and* its subsidiaries. Indeed, "Lenovo or 'Lenovo Group' or the 'Group' refers to *Lenovo Group Limited together with its subsidiaries*." (*See* n.2 *supra* (emphasis added).)

8.      The deep concerted action between LGL and its numerous subsidiaries, including LGL's Codefendants named herein, and the dominant degree of control LGL asserts over such subsidiaries and Codefendants, is further demonstrated by stock ownership guidelines that require "senior management" – again, all of whom support and report directly to Mr. Yang as CEO of LGL and all of whom Lenovo holds out to be officers and senior management of *the Group*, and thus of LGL *and* its subsidiaries – to purchase and maintain ownership of shares of LGL stock (the ownership guideline levels of which are calculated and expressed as a multiple of an executive's or senior manager's base salary).[33] LGL also imposes

> a claw back policy for selected executives, including the Chairman/CEO and *senior management*. The policy states that in the event of a restatement of the Company's [i.e., LGL's] previously issued financial statements as a result of errors, omission, fraud or noncompliance, the Board may, in its discretion, attempt to recover all or a portion of compensation, with respect to any financial year in which the Company's financial results are negatively affected by such restatement.[34]

Thus, with its stock ownership and compensation claw back policies, LGL asserts substantial financial control over individuals who serve as senior management of LGL's subsidiaries as well as of LGL itself. (*See* n.2 *supra* ("Lenovo or 'Lenovo Group' or the 'Group' refers to *Lenovo Group Limited together with its subsidiaries*.") (emphasis added).)

---

[32] Ex. 12 hereto, Arthur Hu's LinkedIn Profile; https://www.linkedin.com/in/arthur-hu-b29125/.

[33] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 136 (PDF p. 38/60).

[34] *Id.* (emphasis added).

9.      The deep concerted action between LGL and its numerous subsidiaries, including LGL's Codefendants named herein, and the dominant degree of control LGL asserts over such subsidiaries and Codefendants, is further demonstrated by LGL's 2024/25 Annual Report, which confirms that Lenovo "[s]ubsidiaries are all entities … over which the Group has control. The Group controls an entity when the Group is exposed to, or has rights to, variable returns from its involvement with the entity and has the ability to affect those returns *through its power to direct the activities of the entity*."[35] Seven of LGL's eight Codefendants named herein – specifically, Lenovo PC HK Limited, Lenovo (Shanghai) Electronics Technology Co. Ltd., Lenovo Information Products (Shenzhen) Co. Ltd., LCFC (Hefei) Electronics Technology Co., Ltd., Lenovo (Beijing) Limited, Motorola Mobile Communication Technology Ltd., and Motorola (Wuhan) Mobility Technologies Communication Company Limited – are identified in the 2024/25 Annual Report as "[p]rincipal subsidiaries" of LGL[36] Thus, the Group has control over each of these seven Codefendants. On information and belief, Codefendant Lenovo Centro Tecnológico S. De R.L. De C.V. is also a principal subsidiary of LGL and, therefore, is also controlled by the Group.

10.     The deep concerted action between LGL and its numerous subsidiaries, including LGL's Codefendants named herein, and the dominant degree of control LGL asserts over such subsidiaries and Codefendants, is further demonstrated by LGL's almost absolute ownership of each of the Lenovo entities – including LGL's Codefendants named herein – with which it coordinates the infringing sale, offer for sale, import, use, and manufacture of infringing products

---

[35] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 180 (PDF p. 44/60) (emphasis added).

[36] *Id.* at 259-262 (PDF pp. 52-55/60).

in the United States. Specifically, LGL, as "the ultimate holding company of Lenovo Group," [37] owns 100% of six of its Codefendants – namely, Lenovo PC HK Limited, Lenovo (Shanghai) Electronics Technology Co. Ltd., Lenovo Information Products (Shenzhen) Co. Ltd., Lenovo (Beijing) Limited, Motorola Mobile Communication Technology Ltd., and Motorola (Wuhan) Mobility Technologies Communication Company Limited – and owns 90% of Codefendant LCFC (Hefei) Electronics Technology Co., Ltd.[38] LGL also owns 100% of five principal subsidiaries located in the U.S.[39]

11.    As part of coordinating concerted action with, and in asserting dominant control over, its numerous subsidiaries, including its Codefendants named herein, LGL operates and manages a global supply chain to develop, manufacture, and deliver to the United States, including Texas, infringing computer products and mobile products. At the direction or control of LGL, infringing products are packaged, shipped, and sold to customers in the United States. LGL reports U.S. sales of infringing products as its own.[40] Further, "Lenovo Group [which consists of ultimate parent LGL and its subsidiaries and Codefendants over which LGL has control] operates a highly complex, global supply chain…" that delivers infringing products to the U.S. market and

---

[37] *Id.* at 1 (PDF p. 4/60) ("Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group.").

[38] *Id.* at 259-262 (PDF pp. 52-55/60).

[39] *Id.* at 261 (PDF p. 54/60) (showing LGL's 100% ownership of U.S.-based "Lenovo Global Technology (United States) Inc."); 263 (PDF p. 56/60) (100% ownership of U.S.-based "Lenovo (United States) Inc."); 264 (PDF p. 57/60) (100% ownership of U.S.-based "Motorola Mobility International Sales LLC"); *id.* (100% ownership of U.S.-based "Motorola Mobility LLC"); *id.* (100% ownership of U.S.-based "Stoneware, Inc."); Ex. 14 hereto, *Lenovo Manufacturing Sites and Suppliers* at 1 (listing "inhouse manufacturing site" in "Whitsett, USA").

[40] *Id.* at 188 (PDF p. 48/60) (reporting revenue for "Americas" as part of the Group's total 2025 revenue of US$69 million); *id.* at 180 (PDF p. 44/60) (stating that "[t]he consolidated financial statements include the financial statements of the Company and all of its subsidiaries … over which the Group has control.").

customers in the U.S.[41] Further still, LGL advertises that it manufactures most of its products in its own facilities, rather than through third parties. For example, on its website, Lenovo states: "We manufacture the majority of our products in our own facilities—more than most other hardware suppliers. This hybrid model helps us bring new innovations to market efficiently while having greater control over product development and supply chain for advantages in quality, security, and time-to-market. Recently, Gartner ranked us #15 on their list of Top 25 World Class Supply Chains."[42] On June 23, 2025, Lenovo posted a press release on its website announcing that "Lenovo ranks 8th in the Gartner® Supply Chain Top 25 for 2025."[43] In the press release, Lenovo stated that "Lenovo's supply chain spans over 30 manufacturing sites in 11 markets across the Asia Pacific, China, Europe, the Middle East and Africa, North America, and South America regions," and "Lenovo's global manufacturing footprint provides the ultimate flexibility and resilience, enabling the company to respond quickly and navigate any global situation effectively."[44]

12.    The factual contentions General Video sets forth below concerning LGL's Codefendant subsidiaries have specific evidentiary support as alleged or, "if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…." Fed. R. Civ. P. 11(b)(3).

---

[41] *See, e.g., id.* at 25 (PDF p. 28/60).

[42]   https://www.lenovo.com/in/inpartners/instudentstore/en/about/whoweare/?orgRef=https%253 A%252F%252Fwww.google.com%252F&srsltid=AfmBOooFtxVObOWatQRdqjwt6ybBDSFE1 VXGobhim4Xg4PgRcO8-aX16&returnUrl=https://www.lenovo.com/in/inpartners/instudentsto re/en/about/whoweare/&srsltid=AfmBOooFtxVObOWatQRdqjwt6ybBDSFE1VXGobhim4Xg4 PgRcO8-aX16.

[43] https://news.lenovo.com/pressroom/press-releases/lenovo-ranks-8th-in-the-gartner-supply-ch ain-top-25-for-2025/.

[44] *Id.*

13.     Lenovo PC HK Limited ("Lenovo PC HK") is a company organized and existing under the laws of the People's Republic of China, with an address at 23rd Floor, Lincoln House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong S.A.R., China. Lenovo PC HK may be served with process pursuant to the provisions of the Hague Convention. Lenovo PC HK may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of the business in which Lenovo PC HK engages in Texas.

14.     According to LGL's 2024/25 Annual Report, Lenovo PC HK is a principal subsidiary of LGL, is 100% owned by LGL, and is engaged in the "[p]rincipal activities" of "[p]rocurement agency and distribution of IT products."[45] On information and belief, Lenovo PC HK is more specifically involved in the procurement, marketing, distribution, and sale of infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, mobile phones, and/or other related products. In particular, and on further information and belief, at the direction and control of, and in concert with, LGL,[46] Lenovo PC HK procures, makes, sells, offers for sale, imports, and uses infringing products manufactured for the United States by Lenovo entities, such as LCFC (Hefei) Electronics Technology Co. and Lenovo Centro Tecnológico S. De R.L. De C.V. In this regard, and on further information and belief, Lenovo PC HK's role includes providing manufacturers with designs and specifications of accused computer products destined for the United States. According to Adrian Chim, Director, Group

---

[45] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 262 (PDF p. 55/60).

[46] As a principal subsidiary of LGL, Lenovo PC HK is controlled by LGL. *See* Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 180 (PDF p. 44/60) ("Subsidiaries are all entities … over which the Group has control."); *id.* at 1 (PDF p. 4/60) ("Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group").

Financial Reporting and Accounting Policy, of Lenovo Hong Kong Services Limited, Lenovo PC HK sells Lenovo-branded products to Lenovo (United States) Inc. ("Lenovo U.S.") for sale in the United States.[47] Thus, Lenovo PC HK infringes and has in the past infringed by selling and offering for sale infringing Lenovo products, such as laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones, to at least Lenovo U.S. and/or other distributors in the U.S., who then re-sell such infringing products to Lenovo customers residing in the United States. On information and belief, Lenovo PC HK also sells, offers to sell, and provides infringing Lenovo products, such as laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones, directly to customers in the U.S. Further, LGL has admitted that it acquired Lenovo PC HK specifically for the purpose of entering the U.S. market.[48] By way of example but not limitation, publicly available bill of lading information confirms that Lenovo PC HK imports, and has in the past imported, into the United States Lenovo-branded products including at least laptop and desktop computers.[49] General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will provide additional, specific evidentiary support confirming that Lenovo PC HK procures, markets, distributes, sells, offers to sell, and imports into the U.S. infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics

---

[47] Ex. 15 hereto, Chim Decl. ¶ 6.

[48] *See* n.7 *supra*.

[49] *See, e.g.,* Group Ex. 26 (short form bills of lading showing representative examples of Lenovo PC HK's importation into the U.S. of "Desktop Computer[s]" and other "Computer[s]" with arrival dates in the U.S. of August 12, 2022, and July 20, 2025, including but not limited to Lenovo models "L14" and "L16," which models, on information and belief, correspond with Lenovo ThinkPad L14 and L16 laptop computers identified as "Accused Lenovo Products" in Appendix A hereto).

cards, and/or mobile phones. *See* Fed. R. Civ. P. 11(b)(3). Lenovo PC HK has a "Distribution Agreement with Lenovo (US), which references distribution to the 'Territory' defined as the United States."[50] Lenovo PC HK specifically targets the U.S. with its sales and distribution activities, admitting that its "distribution agreement with Lenovo (United States) Inc. … covers the entire United States market,"[51] which includes Texas and this District. Lenovo PC HK performs the above activities at the instruction and direction and under the supervision and control of, and in concert with, LGL, which, again, specifically acquired Lenovo PC HK for the purpose of selling Lenovo products into the U.S. Indeed, as the district court in *ACQIS* determined, "[t]he Distribution Agreement provides further evidence that LGL targeted the United States as a whole. Per the Distribution Agreement between [Lenovo] PC HK and Lenovo US, both PC HK and Lenovo US belong to a group of companies, the 'Lenovo Group,' that is owned, directly or indirectly, by LGL."[52] Quoting directly from the Distribution Agreement, the *ACQIS* court further found that "'[t]he Lenovo Group is involved in the manufacture, sale, and distribution of [the Accused Products' in the United States."[53] Finally, the *ACQIS* court concluded, "It is certainly reasonable to find that PC HK and Lenovo US, acting at the behest of the Lenovo Group owned

---

[50] *Id., ACQIS LLC* (citing sealed Exhibit 13, ECF No. 74-7 in Case No. 6:20-cv-00967-ADA, identified in Ex. 16 hereto ECF No. 80-1 ¶ 3 (the public, redacted version of ECF No. 74-1, the Tahdooahnippah Decl.), as "a copy of a Distribution Agreement by and between Lenovo PC HK Limited and Lenovo (United States) Inc. produced by Defendants during jurisdictional discovery….").

[51] *Id., ACQIS*, Case No. 6:20-cv-00967-ADA, ECF No. 29, Lenovo Defs.' Mot. To Dismiss at 11.

[52] *ACQIS*, 572 F. Supp. 3d at 306 (citing Distribution Agreement, sealed Exhibit 13, ECF No. 74-7 in Case No. 6:20-cv-00967-ADA, identified and verified in Ex. 16 hereto ECF No. 80-1 ¶ 3 (the public, redacted version of ECF No. 74-1, the Tahdooahnippah Decl.)).

[53] *ACQIS*, 572 F. Supp. 3d at 306 (quoting Distribution Agreement, sealed Exhibit 13, ECF No. 74-7 in Case No. 6:20-cv-00967-ADA).

by LGL, contracted to target the United States market."[54] Lenovo PC HK, LGL, and Codefendants are aware that infringing products sold in the United States, such as those sold to Lenovo U.S., are distributed throughout the United States, including in Texas.

15. Defendant Lenovo (Shanghai) Electronics Technology Co., Ltd. ("Lenovo Shanghai") is a company organized under the laws of the People's Republic of China. Lenovo Shanghai has an office at No. 68 Building, 199 Fenju Road, Wai Gao Qiao Free Trade Zone, Shanghai, 200131, China. Lenovo Shanghai may be served with process pursuant to the provisions of the Hague Convention. Lenovo Shanghai may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of the business in which Lenovo Shanghai engages in Texas.

16. According to LGL's 2024/25 Annual Report, Lenovo Shanghai is a principal subsidiary of LGL, is 100% owned by LGL, and is engaged in the "[p]rincipal activities" of "[d]istribution of IT products and provision of IT services."[55] On information and belief, Lenovo Shanghai is more specifically involved in the manufacturing and distribution of infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones. On further information and belief, Lenovo Shanghai acts at the instruction and direction and under the supervision and control of, and in concert with, LGL,[56] and

---

[54] *Id.*

[55] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 259 (PDF p. 52/60).

[56] As a principal subsidiary of LGL, Lenovo Shanghai is controlled by LGL. *See* Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 180 (PDF p. 44/60) ("Subsidiaries are all entities … over which the Group has control."); *id.* at 1 (PDF p. 4/60) ("Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group").

has been and is involved in the manufacture of infringing products that are eventually sold to Lenovo PC HK or other companies, who then sell the infringing products to at least Lenovo U.S. and/or other distributors in the U.S., who, in turn, re-sell such infringing products to Lenovo customers residing in the United States. On information and belief, Lenovo Shanghai also sells, offers to sell, and provides infringing Lenovo products, such as laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones, directly to customers in the U.S. Lenovo Shanghai knows that the infringing products it manufactures are intended for the United States market. On information and belief, Lenovo Shanghai has been and is involved in the shipping of infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones to the United States – both directly and through intermediate Lenovo entities. On further information and belief, Lenovo Shanghai has been and is involved in shipping at least some of the infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones to the United States at the instruction and direction and under the supervision and control of, and in concert with, Lenovo PC HK and LGL.

17.    Lenovo Shanghai's role within the Lenovo Group, among others, includes applying for the necessary equipment authorizations and licenses for infringing products in the United States, including with the FCC, and obtaining necessary UL certifications. By way of example but not limitation, Lenovo Shanghai has in the past communicated, and currently continues to communicate, directly with the U.S. Federal Communications Commission ("FCC") to seek FCC "equipment authorization" for Lenovo products "in order to comply with the marketing regulations

in 47 CFT § 2.803 and *the importation rules in 47 CFR § 2.1204.*"[57] By way of further example and not limitation, each of the two example products for which Lenovo Shanghai sought equipment authorization as described above are Lenovo laptop computers that implement, purport to implement, are capable of implementing, practice, purport to practice, are capable of practicing, comply with, purport to comply with, or are capable of complying with one or more of the "Infringing DP Standards" as defined below and are, therefore, "Accused Lenovo Products" as defined below.[58] General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will provide additional, specific evidentiary support confirming that Lenovo Shanghai procures, markets, distributes, sells, offers to sell, and imports into the U.S. infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones. *See* Fed. R. Civ. P. 11(b)(3).

18.    Defendant Lenovo Information Products (Shenzhen) Co. Ltd. ("Lenovo Shenzhen") is a company organized under the laws of the People's Republic of China. Lenovo Shenzhen has an office at ISH2 Building, 3 Guanglan Road, Futian Free Trade Zone, Shenzhen, 518038, China. Lenovo Shenzhen may be served with process pursuant to the provisions of the Hague Convention. Lenovo Shenzhen may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it

---

[57] Ex. 17 hereto, Lenovo Shanghai's Request for Confidentiality to FCC concerning Lenovo product FCC ID O57FLEX5G14X05; Ex. 18 hereto, Lenovo Shanghai's Request for Confidentiality to FCC concerning Lenovo Product FCC ID O57AX200NGW.

[58] Ex. 19 hereto, User Manual for Lenovo Flex 5G 14" submitted with Lenovo Shanghai's request for product authorization for FCC ID O57FLEX5G14X05 (*see* p. 5 (PDF p.11/66) (confirming that the laptop's two USB-C connectors "Support DisplayPort 1.4")); Ex. 20 hereto, User Manual for Lenovo IdeaPad 5i/5 Pro 14" submitted with Lenovo Shanghai's request for product authorization for FCC ID O57AX200NGW (*see* p. 5 (PDF p.11/40) (confirming that the laptop's two USB-C connectors "Support DisplayPort 1.4")).

engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of the business in which Lenovo Shenzhen engages in Texas.

19.    According to LGL's 2024/25 Annual Report, Lenovo Shenzhen is a principal subsidiary of LGL, is 100% owned by LGL, and is engaged in the "[p]rincipal activities" of "[m]anufacturing and distribution of IT products."[59] On information and belief, Lenovo Shenzhen acts at the instruction and direction and under the supervision and control of, and in concert with, LGL,[60] and is involved in the manufacturing and distribution of infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones. Specifically, Lenovo has an "inhouse manufacturing site" in Shenzhen, China, operated by Lenovo Shenzhen.[61] Lenovo Shenzhen has been and is involved in the manufacture of infringing products that it sells to Lenovo PC HK, which, as explained above, then sells the infringing products to at least Lenovo U.S. and/or other distributors in the U.S., who, in turn, re-sell such infringing products to Lenovo customers residing in the United States. On information and belief, Lenovo Shenzhen also sells, offers to sell, and provides infringing Lenovo products, such as laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones, directly to customers in the U.S. Lenovo Shenzhen knows that the infringing products it manufactures are intended for the United States market. On further information and belief, Lenovo Shenzhen has been and is involved in the shipping of

---

[59] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 261 (PDF p. 54/60).

[60] As a principal subsidiary of LGL, Lenovo Shanghai is controlled by LGL. *See* Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 180 (PDF p. 44/60) ("Subsidiaries are all entities … over which the Group has control."); *id.* at 1 (PDF p. 4/60) ("Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group").

[61] Ex. 14 hereto, *Lenovo Manufacturing Sites and Suppliers* at 1.

infringing products, such as laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones, to the United States – both directly and through intermediate Lenovo entities. By way of example but not limitation, publicly available bill of lading information confirms that Lenovo Shenzhen imports, and has in the past imported, into the United States Lenovo-branded products including at least laptop computers and monitors.[62] General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will provide additional, specific evidentiary support confirming that Lenovo Shenzhen procures, markets, distributes, sells, offers to sell, and imports into the U.S. infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones. *See* Fed. R. Civ. P. 11(b)(3). Lenovo Shenzhen has been and is involved in shipping at least some of the infringing products to the United States at the instruction and direction and under the supervision and control of, and in concert with, LGL and/or Lenovo PC HK.

20. LCFC (Hefei) Electronics Technology Co., Ltd. d/b/a LC Future Center and Lenovo Compal Future Center ("LCFC Hefei") is, on information and belief, a company organized under the laws of the People's Republic of China. LCFC Hefei has an office at No. 3188-1, Yungu Road, Economic and Technological Development Zone, Hefei, Anhui, 230601, China. LCFC

---

[62] *See, e.g.,* Group Ex. 27 (short form bills of lading showing representative examples of Lenovo Shenzhen's importation into the U.S. of "Laptop Computer[s]," "23.8 Inch Monitor[s]," and "27 Inch Monitor[s]," with arrival dates in the U.S. ranging from October 20, 2022, through June 25, 2025, including but not limited to Lenovo 27-inch monitor Model T27H-30, which model implements, purports to implement, is capable of implementing, practices, purports to practice, is capable of practicing, complies with, purports to comply with, and/or is capable of complying with one or more of the "Infringing DP Standards" as defined below and is, therefore, an "Accused Lenovo Products" as defined below); *see also* https://support.lenovo.com/us/en/solutions/pd50 0590-thinkvision-t27h-30-monitor-overview (listing "DP" [DisplayPort] video interface in "Monitor Specifications" section).

Hefei may be served with process pursuant to the provisions of the Hague Convention. LCFC Hefei may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of the business in which LCFC Hefei engages in Texas.

21. According to LGL's 2024/25 Annual Report, LCFC Hefei is a principal subsidiary of LGL, is 90% owned by LGL, and is engaged in the "[p]rincipal activities" of "[m]anufacturing and distribution of IT products."[63] On information and belief, LCFC Hefei acts at the instruction and direction and under the supervision and control of, and in concert with, LGL,[64] and is involved in the manufacturing and distribution of infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones. On further information and belief, more than 60% of Lenovo laptops are manufactured by LCFC Hefei. Specifically, as recently as April 2025, Lenovo identified an "inhouse manufacturing site" at the Hefei, China, address for LCFC Hefei set forth in above.[65] On information and belief, LCFC Hefei has been and is involved in the manufacture of infringing products that are eventually sold to Lenovo PC HK, who then sells the infringing products to at least Lenovo U.S. and/or other distributors in the U.S., who, in turn, re-sell such infringing products to Lenovo customers residing in the United States. On information and belief, LCFC Hefei also sells, offers to sell, and provides infringing Lenovo products, such as laptop computers, desktop computers, computer monitors,

---

[63] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 259 (PDF p. 52/60).

[64] As a principal subsidiary of LGL, LCFC Hefei is controlled by LGL. *See* Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 180 (PDF p. 44/60) ("Subsidiaries are all entities … over which the Group has control."); *id.* at 1 (PDF p. 4/60) ("Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group").

[65] Ex. 8 hereto, *Lenovo Manufacturing Sites and Suppliers* at 1.

tablet computers, computer video/graphics cards, and/or mobile phones, directly to customers in the U.S.[66] On information and belief, LCFC Hefei knows that the infringing products it manufactures are intended for the United States market. Further, LCFC Hefei has been and is involved in the shipping of infringing products, such as laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones, to the United States – both directly and through intermediate Lenovo entities. By way of example but not limitation, publicly available bill of lading information confirms that LCFC Hefei imports, and has in the past imported, into the United States Lenovo-branded products including at least laptop computers.[67] General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will provide additional, specific evidentiary support confirming that LCFC Hefei procures, markets, distributes, sells, offers to sell, and imports into the U.S. infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones. *See* Fed. R. Civ. P. 11(b)(3). LCFC Hefei has been and is involved in shipping at least some of the infringing products to the United States at the instruction and direction and under the supervision and control of, and in concert with, LGL and/or Lenovo PC HK.

22.     Lenovo Centro Tecnológico S. de R.L. de C.V. ("Lenovo Centro") is a company organized under the laws of Mexico. Lenovo Centro has an office at No. 316, Boulevard Escobedo, Apodaca Technology Park, Apodaca, Nuevo León, P.O. 66600, México. Lenovo Centro may be served pursuant to the provisions of the Hague Convention. Lenovo Centro may also be served

---

[66] Ex. 15 hereto, Chim Decl. ¶ 6.

[67] *See, e.g.,* Group Ex. 28 (short form bills of lading showing representative examples of LCFC Hefei's importation into the U.S. of "Notebook Computer[s]" with arrival dates in the U.S. ranging from April 5, 2019, and July 12, 2025).

with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of the business in which Lenovo Centro engages in Texas.

23.    Lenovo Centro, an indirect subsidiary of LGL, is involved in the manufacturing, assembly, and testing of infringing personal computers and other related products. Specifically, Lenovo has an "inhouse manufacturing site" in Apodaca, Mexico, operated by Lenovo Centro.[68] Lenovo Centro has been and is involved in the manufacture of infringing products that it sells to Lenovo PC HK, who then sells the Accused Products to Lenovo U.S.[69] Lenovo Centro knows that the infringing products it manufactures are intended for the United States market. Further, Lenovo Centro has been and is involved in the shipping of infringing products, such as laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones, to the United States – both directly and through intermediate Lenovo entities. Lenovo Centro has been and is involved in shipping at least some of the infringing products to the United States at the instruction and direction and under the supervision and control of, and in concert with, LGL and/or Lenovo PC HK. General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will provide additional, specific evidentiary support confirming that Lenovo Centro procures, markets, distributes, sells, offers to sell, and imports into the U.S. infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones. *See* Fed. R. Civ. P. 11(b)(3).

---

[68] *Id.*

[69] Ex. 15 hereto, Chim Decl. ¶ 6.

24.     Lenovo (Beijing) Limited ("Lenovo Beijing") is a company organized under the laws of China. Lenovo Beijing has an office at No. 6, Chuangye Road, Shangdi, Haidan District, Beijing 100085, China. Lenovo Beijing may be served with process pursuant to the provisions of the Hague Convention. Lenovo Beijing may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of the business in which Lenovo Beijing engages in Texas.

25.     According to LGL's 2024/25 Annual Report, Lenovo Beijing is a principal subsidiary of LGL, is 100% owned by LGL, and is engaged in the "[p]rincipal activities" of "[m]anufacturing and distribution of IT products and provision of IT services."[70] Upon information and belief, Lenovo Beijing acts at the instruction and direction and under the supervision and control of, and in concert with, LGL and/or Lenovo PC HK to sell, offer for sale, import, use, and make infringing products in the United States.[71] For example, Lenovo Beijing is the registrant of www.lenovo.com, through which the Lenovo Defendants sell infringing products directly to customers in the United States. On further information and belief, Lenovo Beijing operates the "Beijing Data Center to support Lenovo global core business." Upon information and belief, Lenovo Beijing, operating in concert with LGL and Codefendants, hosts Lenovo.com, the

---

[70] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 259 (PDF p. 52/60).

[71] As a principal subsidiary of LGL, Lenovo Beijing is controlled by LGL. *See* Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 180 (PDF p. 44/60) ("Subsidiaries are all entities … over which the Group has control."); *id.* at 1 (PDF p. 4/60) ("Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group").

Group's primary website from which it projects itself to the world as the single entity "Lenovo"[72] under the tag line "One Purpose. *One Lenovo*,"[73] boasts of its "*unified* One Lenovo team around the world,"[74] and offers for sale and sells hundreds of products including, among others, "Accused Lenovo Products" as defined below to customers throughout the United States, including in Texas and this District.[75]

26.    Lenovo Beijing's role within the Lenovo Group, among others, includes applying for the necessary equipment authorizations and licenses for infringing products in the United States, including at least with the FCC. By way of example but not limitation, Lenovo Beijing has in the past communicated, and currently continues to communicate, directly with the U.S. Federal Communications Commission ("FCC") to seek FCC "equipment authorization" for Lenovo products "in order to comply with the marketing regulations in 47 CFT § 2.803 and *the importation rules in 47 CFR § 2.1204*."[76] By way of further example and not limitation, each of the two products for which Lenovo Beijing sought equipment authorization as described above and in footnote 72 are Lenovo laptop computers that implement, purport to implement, are capable of implementing, practice, purport to practice, are capable of practicing, comply with, purport to

---

[72] Ex. 25 hereto, ICANN Lookup for Lenovo.com (listing "Lenovo Beijing Limited" as the "Registrant … Organization" for the domain).

[73] https://www.lenovo.com/us/en/about/ (emphasis added).

[74] *See* https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf download link of Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report, available at https://investor.lenovo.com /en/global/home.php; Ex. 7 at 11 (PDF p. 14/60) (LGL CEO Mr. Yang's reference to a "unified One Lenovo team around the world") (emphasis added).

[75] *See, e.g.,* https://www.lenovo.com/us/en/pc/ (offering and making available for online purchase Lenovo-branded laptops, desktops, workstations, monitors, tablets, servers, accessories, storage, and other products).

[76] Ex. 21 hereto, Lenovo Beijing's Request for Confidentiality to FCC concerning Lenovo product FCC ID A5M-QCNFA725 (emphasis added); *see also* Ex. 22 hereto, Lenovo Beijing's Request for Confidentiality to FCC concerning Lenovo Product FCC ID A5ML01WC014.

comply with, or are capable of complying with one or more of the "Infringing DP Standards" as defined below and are, therefore, "Accused Lenovo Products" as defined below.[77] Lenovo Beijing confirmed its substantial role with respect to the Lenovo ThinkBook 13x Gen 2 for which it sought equipment authorization from the FCC for subsequent import into the United States, stating "Lenovo (Beijing) Limited has spent substantial effort in developing this product and it is one of the first of its kind in industry." (Ex. 22 hereto (underlining in original).) General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will provide additional, specific evidentiary support confirming that Lenovo Beijing procures, markets, distributes, sells, offers to sell, and imports into the U.S. infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones. *See* Fed. R. Civ. P. 11(b)(3).

27.    Lenovo (Thailand) Limited ("Lenovo Thailand") is a company organized under the laws of Thailand. Lenovo Thailand has an office at 12th Floor, AIA Capital Center Building, No. 89 Ratchadaphisek Rd. Khwaeng Din Daeng, Khet Din Daeng, Bangkok 10400, Thailand, and may be served with process pursuant to international agreement. Lenovo Thailand may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or

---

[77] Ex. 23 hereto, User Manual for Lenovo X13 Gen 4 and X13 Yoga Gen 4 submitted with Lenovo Beijing's request for product authorization for FCC ID A5M-QCNFA725 (*see* p. 10 (PDF p.16/76) (confirming that the laptop's "USB-C to DP [i.e., DisplayPort]" functionality and USB-C "Thunderbolt 4" connectivity, which natively supports DisplayPort Alternate Mode ("DP Alt Mode")); Ex. 24 hereto, User Manual for Lenovo ThinkBook 13x Gen 2 submitted with Lenovo Beijing's request for product authorization for FCC ID A5ML01WC014 (*see* p. 8 (PDF p.14/43) (confirming that the laptop's two USB-C "Power connector/Thunderbolt 4 connector[s]" support "DisplayPort 1.4")).

maintained a resident agent for service of process in Texas as required by statute. This action arises out of the business in which Lenovo Thailand engages in Texas.

28.    According to LGL's 2024/25 Annual Report, Lenovo Thailand is a principal subsidiary of LGL, is owned 100% by LGL, and is engaged in the "[p]rincipal activities" of the "[d]istribution of IT products as well as mobile phone, smartphone and tablet, server and storage."[78] Upon information and belief, Lenovo Thailand acts at the instruction and direction and under the supervision and control of, and in concert with, LGL[79] and/or other LGL subsidiaries/affiliates to sell, offer for sale, import, use, and make infringing products in the United States, including mobile phone products. General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will provide additional, specific evidentiary support confirming that Lenovo Thailand procures, markets, distributes, sells, offers to sell, and imports into the U.S. at least infringing mobile phones as described more fully below. *See* Fed. R. Civ. P. 11(b)(3).

29.    Motorola Mobile Communication Technology Ltd. ("Motorola MCT") is a company organized under the laws of China. Motorola MCT may be served with process pursuant to the provisions of the Hague Convention. Motorola MCT may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of the business in which Motorola MCT engages in Texas.

---

[78] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 263 (PDF p. 56/60).

[79] As a principal subsidiary of LGL, Lenovo Thailand is controlled by LGL. *See* Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 180 (PDF p. 44/60) ("Subsidiaries are all entities … over which the Group has control."); *id.* at 1 (PDF p. 4/60) ("Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group").

30.     According to LGL's 2024/25 Annual Report, Motorola MCT is a principal subsidiary of LGL, is owned 100% by LGL, and is engaged in the "[p]rincipal activities" of "[m]anufacturing and distribution of IT products and provision of IT services."[80] Upon information and belief, Motorola MCT acts at the instruction and direction and under the supervision and control of, and in concert with, LGL[81] and/or other LGL subsidiaries/affiliates to sell, offer for sale, import, use, and make infringing products in the United States, including mobile phone products. General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will provide additional, specific evidentiary support confirming that Motorola MCT procures, markets, distributes, sells, offers to sell, and imports into the U.S. at least infringing mobile phones as described more fully below. *See* Fed. R. Civ. P. 11(b)(3).

31.     Motorola (Wuhan) Mobility Technologies Communication Company Limited ("Motorola Wuhan") is a company organized under the laws of China, with a principal place of business located at No. 19, Gaoxin 4th Road, Donghu New Technology Development Zone Wuhan, Hubei, 430205 China. Motorola Wuhan may be served with process pursuant to the provisions of the Hague Convention. Motorola Wuhan may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of the business in which Motorola Wuhan engages in Texas.

---

[80] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 262 (PDF p. 55/60).

[81] As a principal subsidiary of LGL, Motorola MCT is controlled by LGL. *See* Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 180 (PDF p. 44/60) ("Subsidiaries are all entities … over which the Group has control."); *id.* at 1 (PDF p. 4/60) ("Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group").

32.     According to LGL's 2024/25 Annual Report, Motorola Wuhan is a principal subsidiary of LGL, is owned 100% by LGL, and is engaged in the "[p]rincipal activities" of "[m]anufacturing of mobile products."[82] Upon information and belief, Motorola Wuhan acts at the instruction and direction and under the supervision and control of, and in concert with, LGL[83] and/or other LGL subsidiaries/affiliates to sell, offer for sale, import, use, and make infringing products in the United States, including mobile products. By way of example but not limitation, publicly available bill of lading information confirms that Motorola imports, and has in the past imported, into the United States Motorola-branded products including at least mobile phones.[84] General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will provide additional, specific evidentiary support confirming that Motorola Wuhan procures, markets, distributes, sells, offers to sell, and imports into the U.S. at least infringing mobile phones as described more fully below. *See* Fed. R. Civ. P. 11(b)(3).

33.     Fujitsu Client Computing Limited ("FCCL") is a company organized under the laws of Japan, with a principal place of business located at Shinkawasaki Twin Tower (West Tower), 1-1-2 Kashimada, Saiwai-ku, Kawasaki, Kanagawa 212-0058, Japan. FCCL may be served with process pursuant to the provisions of the Hague Convention. FCCL may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as

---

[82] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 262 (PDF p. 55/60).

[83] As a principal subsidiary of LGL, Motorola Wuhan is controlled by LGL. *See* Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 180 (PDF p. 44/60) ("Subsidiaries are all entities … over which the Group has control."); *id.* at 1 (PDF p. 4/60) ("Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group").

[84] *See, e.g.,* Exs. 34-38 (short form bills of lading showing representative examples of Motorola Wuhan's importation into the U.S. of "Mobile Phone[s]" with arrival dates in the U.S. ranging from June 8, 2020, through April 24, 2023.

its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of the business in which FCCL engages in Texas.

34.     According to LGL's 2024/25 Annual Report, FCCL is a principal subsidiary of LGL, is owned 51% by LGL, and is engaged in the "[p]rincipal activities" of "[m]anufacturing and distribution of IT products."[85] Upon information and belief, Motorola Wuhan acts at the instruction and direction and under the supervision and control of, and in concert with, LGL[86] and/or other LGL subsidiaries/affiliates to sell, offer for sale, import, use, and make infringing products in the United States, including mobile products. General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will provide additional, specific evidentiary support confirming that Motorola Wuhan procures, markets, distributes, sells, offers to sell, and imports into the U.S. at least infringing mobile phones as described more fully below. *See* Fed. R. Civ. P. 11(b)(3).

35.     As discussed above, the Defendants are companies that together – with their affiliates – comprise one of the world's leading manufacturers of computers and computer-related products. Together, Defendants design, manufacture, use, import into the United States, sell, and/or offer for sale in the United States infringing laptop computers, desktop computers, computer monitors, tablet computers, computer video/graphics cards, and/or mobile phones. Lenovo

---

[85] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 259 (PDF p. 52/60).

[86] As a principal subsidiary of LGL, FCCL is controlled by LGL. *See* Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 180 (PDF p. 44/60) ("Subsidiaries are all entities … over which the Group has control."); *id.* at 1 (PDF p. 4/60) ("Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group").

products, including the products accused of infringement herein, are marketed, offered for sale, and/or sold throughout the United States, including within this District.

36.    As discussed above, Defendants and their affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of infringing products in the United States, including in the State of Texas generally, and this District in particular. Defendants engage in coordinated and concerted action to direct infringing products to customers throughout the United States, including Texas.

37.    As discussed above, Defendants and their affiliates share the same senior management, common ownership, advertising platforms, facilities, distribution chains and platforms, and infringing product lines and products involving related technologies.

38.    In the product naming and branding, promotional materials, manuals, guides, terms of use, sales agreements, warranties, or similar documentation related to infringing Lenovo-branded products, the Group regularly omits which specific Lenovo company or entity is responsible for the documents or associated products, or instead simply identifies "Lenovo" or the "Lenovo Group." As a result, customers of infringing Lenovo-branded products understand that LGL or the Lenovo Group as a whole, makes and sells the infringing products. Customers' understandings in this regard are consistent with the "unified One Lenovo team around the world" of which LGL's CEO Mr. Yang boasts.[87] The Group even creates similar – albeit somewhat less pervasive – confusion with respect to the distinction between Group entities bearing the "Motorola" and "Lenovo" names. In this regard, for example, a Motorola website advertises, offers to sell, and sells the "Lenovo Tab P11 (Gen 2)" tablet laptop computer. (*See* https://www

---

[87] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 11 (PDF p. 14/60).

.motorola.com/us/en/p/phones/moto-e/lenovo-tab-p11/zzitztatb7j?srsltid=AfmBOoqnaLmG

w587u4OGEPdCAkKBLApcuX_1AJO10qxuMQx3_76y5LX9&pn=ZABF0309US.)

39.     LGL, and Lenovo as a whole, holds itself out as the entity that manufactures, sells, offers to sell, imports, and uses infringing products in the United States, including Texas. For example, the privacy statement of www.lenovo.com states that "[t]his privacy statement applies to data collected through websites owned and operated by LGL and its affiliated group companies ("Lenovo")."[88] Lenovo sells and offers for sale products through its U.S. website, and "Lenovo" (i.e., "Lenovo Group Limited and its affiliated group companies"). Those sales are subject to the terms of a "Lenovo Sales Agreement," which applies to and is binding on all customers, including customers within the United States and Texas.[89] LGL, and Lenovo as a whole, sell the "Accused Lenovo Products" as defined below directly to customers in the United States, including within Texas, through www.lenovo.com/us/en.

40.     Defendants and their affiliates operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

41.     On information and belief, Defendants directly and/or indirectly develop, design, manufacture, distribute, market, offer for sale, and/or sell infringing products in the United States, including in the Eastern District of Texas, and otherwise direct infringing activities to this District in connection with their products and services.

42.     As discussed above, the deep concerted action between LGL and its numerous subsidiaries, including LGL's Codefendants named herein, and the dominant degree of control LGL asserts over such subsidiaries and Codefendants eliminates any practical distinction between

---

[88] *See* https://www.lenovo.com/us/en/privacy/. *See also* lenovo.com/us/en/legal/ ("The following are terms between you and Lenovo ('we,' 'us,' or 'our')."

[89] https://www.lenovo.com/us/en/terms-and-conditions/.

LGL, Codefendants, and LGL's other subsidiaries as confirmed by their advertisement to the public, and practical operation, as a single entity to which they refer as the "Group" or the "Lenovo Group." The Group's public-facing website, Lenovo.com, and the hundreds of webpages to which the main site provides links, make no distinction between various Lenovo entities and insinuate the Group is a single company. LGL's "One Lenovo" tagline perfectly suits LGL and the Group's "One Lenovo" approach to every aspect of their business. Thus, although LGL owns almost 100% of each of its subsidiaries, including LGL's Codefendants named herein, it presents itself as – and is – much more than a holding company.

## JURISDICTION, VENUE, AND JOINDER

43.     This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

44.     This Court has exclusive jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).

45.     This Court has personal jurisdiction over Defendants. As alleged above with respect to each Defendant, individually, and as alleged above with respect to all Defendants, collectively, and acting in concert with one another, and at the instruction and direction and under the supervision and control of, and in concert with, LGL, Defendants regularly conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this Judicial District and/or have contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States. Defendants, directly and/or through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and/or selling products that infringe the Patents-in-Suit. Courts in Texas, including within this Judicial District, have concluded that Lenovo is subject to personal jurisdiction in the State of

Texas. *See ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 307 (W.D. Tex. 2021) ("[T]his Court finds that the exercise of personal jurisdiction over [LGL] is both reasonable and fair."); *see also AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv- 00280-RWS-RSP, Dkt. No. 110 (report and recommendation) (E.D. Tex. Sept. 6, 2023) ("exercising personal jurisdiction [over LGL] would not offend traditional notions of fair place and substantial justice.").

46.     The Lenovo Defendants induce their subsidiaries, affiliates, retail partners, and customers to make, use, sell, offer for sale, and/or import throughout the United States, including within this Judicial District, infringing products and place such products into the stream of commerce via established distribution channels, knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas. The foregoing paragraphs are incorporated by reference as if fully set forth herein. The Lenovo Defendants purposefully direct the infringing products identified herein into established distribution channels within this District and the U.S. nationally. For example, Lenovo sells and offers to sell the infringing products through its websites, Lenovo.com[90] and Motorola.com, which may be accessed throughout the United States, the State of Texas, and this Judicial District. Thus, in addition to their acts of direct and indirect infringement as described throughout this Complaint, the Lenovo Defendants have also committed acts of indirect infringement at least by manufacturing products for the U.S. market, and/or directing them to the U.S. market, knowing they will cause infringement through import, sale, and/or use in the United States. *See, e.g., Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012) ("[W]here a foreign party, with the requisite knowledge and intent, employs extraterritorial means to actively induce acts of direct

---

[90] The Lenovo website is maintained by Defendant Lenovo Beijing. *See* https://www.whois.com/whois/lenovo.com.

infringement that occur within the United States, such conduct is not categorically exempt from redress under § 271(b).").

47. Lenovo has authorized sellers and sales representatives that offer for sale and sell infringing products throughout the State of Texas and to consumers throughout this District, including at the following locations in this District: Best Buy, 1201 Barbara Jordan Blvd., Suite 100, Austin, TX 78723; Costco Wholesale, 4301 W. William Cannon Dr., Bldg. A100, Austin, TX 78749; Office Depot, 907 W. 5th St., #101, Austin, TX 78703; Target, 5300 S. Mo Pac Expressway, Austin, TX 78749-1112; Wal-Mart, 1030 Norwood Park Blvd., Austin, TX 78753; Verizon, 1011 E. 5th St., Suite 140, Austin, TX, 78702; AT&T, 1011 W. 5th St., Austin, TX 78703; T-Mobile, 500 E. Ben White Blvd., Suite 300, Austin, TX 78704.

48. Based on Lenovo's connections and relationships with these retailers and digital distribution platforms, Lenovo knows that Texas is a termination point of its established distribution channels, including the online as well as physical stores offering Lenovo and Motorola products to users in Texas. Lenovo, therefore, has purposefully directed its activities at the State of Texas, and should reasonably anticipate being brought before this Court.

49. LGL provides "Hardware Maintenance Manuals" for infringing products in the United States which bear a "Lenovo" copyright that does not refer to any specific Lenovo entity, and which manuals are "delivered pursuant to a General Services Administration" contract. These manuals specify that they are "printed in China." Such English language manuals demonstrate Lenovo's knowledge and intent for infringing products to be imported into, sold, and used throughout the United States, including Texas.

50. The Lenovo Defendants are also subject to this Court's personal jurisdiction because each Defendant, directly, through, or in concert with subsidiaries, affiliates, or

intermediaries, including such Defendant's Codefendants named herein, some or all of which Codefendants are such Defendant's agents and/or alter egos as discussed more fully above, makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products within the State of Texas and this District that infringe one or more claims of the asserted patents owned by General Video, as alleged more fully below.

51.    As also discussed above, throughout LGL's 2024/25 Annual Report, LGL repeatedly refers to itself and its subsidiaries collectively as "Lenovo," "the Company," "Lenovo Group," and/or "the Group,"[91] and fails to distinguish its activities from its subsidiaries. Further, LGL fully owns each Codefendant.[92] For these reasons as well, LGL's Codefendant/subsidiaries are agents or alter egos of LGL.

52.    In the alternative, this Court has personal jurisdiction over the Lenovo Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal patent law, the Lenovo Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over the Lenovo Defendants is consistent with the United States Constitution.

53.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, the Lenovo Defendants are not residents in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

54.    The Lenovo Defendants make, use, sell, offer for sale, and/or import infringing products into and/or within this District, maintain a permanent and/or continuing presence within

---

[91] Ex. 7 hereto, Lenovo Group Limited 2024/25 Annual Report at 1 (PDF p. 4/60); *see also* https://investor.lenovo.com/en/global/home.php.

[92] *Id.* at 259-265 (PDF pp. 52-58/60) (listing "100%" as LGL's "[p]ercentage of issued share capital held" with respect to its "[p]rincipal subsidiaries," which include almost all of LGL's Codefendants named herein. LGL owns 90% of Defendant LCFC Hefei. *Id.*

this District, and/or have the requisite minimum contacts with this District such that venue in this District is fair and reasonable. On information and belief, the Lenovo Defendants have transacted and, as of the time of the filing of this Complaint, are continuing to transact business within this District.

55.   The Lenovo Defendants are properly joined in this action pursuant to 35 U.S.C. § 299(a) because (1) General Video herein has asserted rights to relief against the Lenovo Defendants jointly, severally, and in the alternative with respect to or arising out of the same series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling the same accused products; and (2) questions of fact common to all of the Lenovo Defendants will arise in this action.

**THE GENERAL VIDEO PATENTS**

56.   General Video is the assignee of, and has standing to sue and collect damages for Lenovo's past and ongoing infringement associated with its products' implementation of DisplayPort functionality of, each of the following patents: U.S. Patent Nos. 6,584,443 ("the 443 Patent"); 7,069,224 ("the 224 Patent"); 7,225,282 ("the 282 Patent"); 7,359,437 ("the 437 Patent"); 9,036,010 ("the 010 Patent"); and 9,843,786 ("the 786 Patent") (collectively, the "General Video Patents" or the "Asserted Patents").

57.   The 443 Patent issued on June 24, 2003. The named inventors of the 443 Patent are: Akihisa Kawamura; Naoki Ejima; and Masatoshi Shimbo. The 443 Patent expired on April 20, 2020. A true and correct copy of the 443 Patent is attached as Exhibit 1 hereto.

58.   The 224 Patent issued on June 27, 2006. The named inventors of the 224 Patent are: Akihisa Kawamura; Naoki Ejima; and Masatoshi Shimbo. The 224 Patent expired on April 20, 2020. A true and correct copy of the 224 Patent is attached as Exhibit 2 hereto.

59. The 282 Patent issued on May 29, 2007. The named inventor of the 282 Patent is Jim Lyle. A true and correct copy of the 282 Patent is attached as Exhibit 3 hereto.

60. The 437 Patent issued on April 15, 2008. The named inventors of the 437 Patent are: Seung Ho Hwang; Jano Banks; Paul Daniel Wolf; Eric Lee; Baegin Sung; and Albert M. Scalise. A true and correct copy of the 437 Patent is attached as Exhibit 4 hereto.

61. The 010 Patent issued on May 19, 2015. The named inventor of the 010 Patent is Nicole Burleigh Shepherd. A true and correct copy of the 010 Patent is attached as Exhibit 5 hereto.

62. The 786 Patent issued on December 12, 2017. The named inventor of the 786 Patent is Nicoll Burleigh Shepherd. A true and correct copy of the 786 Patent is attached as Exhibit 6 hereto.

63. The General Video Patents are generally directed to the high-speed, efficient, and secure transmission of audio and video data between transmitting and receiving devices. As set forth more fully in the numbered counts below with respect to each General Video Patent, claimed inventions of the General Video Patents are essential to, and must be used to comply with, implementations of several versions of the DisplayPort standard promulgated by the Video Electronics Standards Association (VESA). The DisplayPort standards generally relate to the connection of source devices (e.g., desktop or laptop computers) and sink devices (e.g., computer monitors or laptop displays) and the transmission of packetized video, audio, and/or other forms of data between such source and sink devices. Further, and as also set forth more fully in the numbered counts below, claimed inventions of certain of the General Video Patents are essential to, and must be used to comply with, implementations of certain versions of the Embedded DisplayPort (eDP) standard, a companion standard to DisplayPort. The eDP standards are directed to display panel interfaces for portable and embedded devices and relate to the signaling interface

between graphics cards and integrated displays, such as, for example, the integrated display on a laptop computer. Collectively and generally, the DisplayPort and eDP standards, implementations of which infringe one or more claims of any General Video Patent, are referred to herein as the "Infringing DP Standards."[93] VESA DisplayPort Standard, Version 1, Revision 2, which was introduced January 7, 2010 ("DP v1.2") infringes at least one claim of each of the General Video Patents and is thus always an Infringing DP Standard relative to the assertions herein. Specific additional Infringing DP Standards, and versions thereof, are further identified with respect to each General Video Patent in the numbered counts below. As such, each of the General Video Patents is a standard essential patent ("SEP") with respect to a respective identified subset of DisplayPort standards, eDP standards, or versions thereof.[94]

64.　Each of the General Video Patents is included among the pool of patents licensed and offered for license as part of the DisplayPort Patent Portfolio License (the "DP License") offered through Via Licensing Corporation d/b/a Via Licensing Alliance ("Via-LA"). *See* https://www.via-la.com/licensing-2/displayport/; https://www.via-la.com/licensing-2/displayport/displayport-patent-list/ (see downloadable list of licensed patents). General Video, Maxell, Ltd., Rambus Inc., and Sony Group Corporation are currently licensors under the DP License. *See* https://

---

[93] A standard itself cannot infringe a patent claim. Instead, implementations of a standard embodied in the operability or functionality of standard-compliant products, or methods or processes performed pursuant to implementations of a standard, can infringe apparatus and/or method claims of a patent. Subject to that understanding, for ease of reference herein, General Video refers to "Infringing DP Standards."

[94] As the Federal Circuit has explained, "Creating some standards … is a complicated process that involves the collaboration and can involve cooperation of a number of interested parties. Due to the collaborative nature of this process, the chosen standard may include technology developed by a number of different parties. Sometimes that technology is covered by patents. Because the standard *requires* that devices utilize specific technology, compliant devices *necessarily* infringe certain claims in patents that cover technology incorporated into the standard. These patents are called 'standard essential patents' ('SEPs')." *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014) (emphasis in original).

www.via-la.com/licensing-2/displayport/displayport-licensors/. To date, almost 100 companies are licensed under the DP License. *See* https://www.via-la.com/licensing-2/displayport/displayport-licensees/.

65.    Before the General Video Patents' inclusion as part of the DP License, each such patent was determined by an independent patent consultant to be an SEP with respect to one or more versions of the DisplayPort and/or eDP standards.

66.    VESA, which sets industry-wide interface standards for the PC, workstation, and consumer electronics display industry, approved the first version of the DisplayPort standard in May 2006.

67.    "VESA is an international nonprofit corporation led by a board of directors, which represents a voting membership of more than 300 corporate members worldwide." *See* https://www.displayport.org/. Lenovo is a corporate member and partner of VESA. *Id.*

68.    VESA describes DisplayPort as

the industry replacement for outmoded display technologies such as DVI, LVDS and VGA and it's currently being built into all new PC chipsets, GPU's [sic] and display controllers from major silicon manufacturers. DisplayPort utilizes a state-of-the-art digital protocol and provides an expandable foundation to enable amazing digital display technology while providing compatibility with existing equipment.

* * *

DisplayPort has unique features and capabilities that enable exciting new types of displays and display usages. And it doesn't require PC owners to replace all of their equipment because simple adaptors allow DisplayPort enabled devices to connect to monitors and projectors that use older technologies such as DVI, HDMI and VGA.

https://vesa.org/about-displayport/.

69.    VESA further describes DisplayPort as "the Ultimate Digital Connection" that "[d]elivers a true digital display experience" and "[c]onnects to virtually any device." https://vesa.org/displayport-developer/about-displayport/.

70.    VESA adopted eDP in December 2008, and describes that standard as follows:

For devices such as laptop PCs with an embedded display, eDP is the electrical interface for transporting video data from the system's graphics hardware to the internal display panel. eDP is widely adopted for larger, higher-resolution displays as it provides the highest resolutions, refresh rates and color depths using a low wire count with low EMI radiation.

* * *

eDP applications include laptops, all-in-one PCs, premium tablets, automotive displays, and other systems that incorporate a display panel with a video or graphics video source.

https://vesa.org/featured-articles/vesa-publishes-embedded-displayport-standard-version-1-5/.

## LENOVO'S ACCUSED PRODUCTS

71.    As alleged below, Lenovo makes, uses, sells, and/or offers to sell in, and/or imports into, the United States Lenovo-branded, Motorola-branded, and Fujitsu-branded products that implement, purport to implement, are capable of implementing, practice, purport to practice, are capable of practicing, comply with, purport to comply with, or are capable of complying with one or more of the Infringing DP Standards irrespective of the form factor of the physical port used in such implementation, practice, and/or compliance, including but not limited to, for example, use of standard, dedicated DisplayPort ports and connectors or use of DP Alt Mode connectivity over USB-C ports and connectors (collectively, the "Accused Lenovo Products"). As set forth more fully in the numbered counts below with respect to each General Video Patent, the Accused Lenovo Products and the operation thereof infringe the General Video Patents, including without limitation by implementing, purporting to implement, being capable of implementing, practicing, purporting to practice, being capable of practicing, complying with, purporting to comply with, or being capable of complying with one or more of the Infringing DP Standards. A non-exhaustive list of the Accused Lenovo Products is included in Appendix A hereto.

72.     Lenovo has in the past made, used, sold, and/or offered to sell in, and/or imported into, the United States Lenovo-branded and Motorola-branded products that implemented, purported to implement, were capable of implementing, practiced, purported to practice, were capable of practicing, complied with, purported to comply with, or were capable of complying with one or more of the Infringing DP Standards irrespective of the form factor of the physical port used in such implementation, practice, and/or compliance, including but not limited to, for example, use of standard, dedicated DisplayPort ports and connectors or use of DP Alt Mode connectivity over USB-C ports and connectors (with the products described in paragraph 69 above, also "Accused Lenovo Products"). As set forth more fully in the numbered counts below with respect to each General Video Patent, at least by implementing, purporting to implement, being capable of implementing, practicing, purporting to practice, being capable of practicing, complying with, purporting to comply with, or being capable of complying with one or more of the Infringing DP Standards, the Accused Lenovo Products that Lenovo has in the past made, used, sold, offered to sell in, and/or imported into, the United States infringed the standard essential General Video Patents. A non-exhaustive list of Accused Lenovo Products that Lenovo has in the past made, used, sold, and/or offered to sell in, and/or imported into, the United States is included in Appendix A hereto. Non-exhaustive lists of Accused Motorola Products and Accused Fujitsu Products, which are also defined below as Accused Lenovo Products, are set forth in the paragraphs below.

73.     Judge Albright's March 5, 2025 Standing Order Governing Proceedings (OGP) – Patent Cases (the "OGP"), which applies in the related case styled as *General Video, LLC v. Dell Inc., et al.*, Case No. 1:24-cv-01530-ADA, pending before Judge Albright in the Austin Division of the Western District of Texas, requires that "[n]ot later than 7 days before the [Case

Management Conference,] [t]he plaintiff shall serve preliminary infringement contentions chart[s] setting forth where in the accused product(s) each element of the asserted claim(s) are found." The OGP further provides:

> The parties may amend preliminary infringement contentions and preliminary invalidity contentions without leave of court so long as counsel certifies that it undertook reasonable efforts to prepare its preliminary contentions and that the amendment is based on material identified after those preliminary contentions were served and should do so seasonably upon identifying any such material.

*Id.* at n.10.

74.     Accordingly, in identifying Lenovo products for inclusion among the Accused Lenovo Products identified in the non-exhaustive list set forth in Appendix A hereto, and identified in the non-exhaustive lists of Accused Motorola Products and Accused Fujitsu Products, which are also defined below as Accused Lenovo Products, as set forth in the paragraphs below, General Video has made such identification as specific as possible based on information of which General Video is aware and information known to General Video through a reasonable prefiling investigation conducted in the ordinary course of business.

75.     Despite General Video's diligent efforts in this regard, it is possible – if not likely – that General Video does not have reasonable access to, is not reasonably aware of, and cannot reasonably know, the identity of all products that Lenovo makes, uses, sells, and/or offers to sell in, and/or imports into, the United States that comply with, implement, and/or embody, or that Lenovo has in the past made, used, sold, and/or offered to sell in, and/or imported into, the United States that complied with, implemented, and/or embodied, the Infringing DP Standards. Accordingly, in addition to the Lenovo Products specifically identified in Appendix A hereto, and specifically identified in the non-exhaustive lists of Accused Motorola Products and Accused Fujitsu Products, which are also defined below as Accused Lenovo Products, as set forth in the

paragraphs below, General Video includes within the definition of "Accused Lenovo Products" all products that Lenovo has made, used, sold, and/or offered for sale in, and/or imported into, the United States at any time, that (1) have complied with, implemented, and/or embodied the Infringing DP Standards and/or (2) are or were no more than colorably different from any Accused Lenovo Product(s) specifically identified in Appendix A hereto, and/or specifically identified in the non-exhaustive lists of Accused Motorola Products and Accused Fujitsu Products, which are also defined below as Accused Lenovo Products, as set forth in the paragraphs below, relative to such products' compliance with and/or implementation or embodiment of the Infringing DP Standards.

76.    Upon General Video's discovery of more specific information concerning the identity of additional Accused Lenovo Products over the course of these proceedings, General Video will seasonably supplement or amend, and/or, if necessary, move for leave to supplement or amend, its identification of Accused Lenovo Products as permitted under the OGP.

77.    On information and belief, and unless otherwise made clear by the description of a specific version of the Infringing DP Standards, the Accused Lenovo Products employ, implement, embody, or utilize materially the same DisplayPort technology, such that the facts material to infringement by one Accused Lenovo Product will likely be material to all Accused Lenovo Products.

78.    In addition to the products identified in the non-exhaustive lists of Accused Motorola Products and Accused Fujitsu Products, which are also defined below as Accused Lenovo Products, as set forth in the paragraphs below, four general categories of Accused Lenovo Products infringe the General Video Patents: Lenovo laptop computers (the "Accused Lenovo Laptops"); Lenovo desktop computers (the "Accused Lenovo Desktops"); Lenovo computer

monitors (the "Accused Lenovo Monitors"); and Lenovo video/graphics cards (the "Accused Lenovo Graphics Cards").

79.    As shown below, Lenovo makes, uses, sells, and/or offers to sell in, and/or imports into, the United States, and/or has made, used, sold, and/or offered to sell in, and/or imported into, the United States, hundreds of models of laptop computers, covering numerous product lines.



*See* https://www.lenovo.com/us/en/laptops/  (last visited August 22, 2024) (highlighting added).

80.    Based on information published on Lenovo's website, many of the laptop computers Lenovo sells and offers to sell, and/or has sold and offered to sell, comply with, implement, and/or embody the Infringing DP Standards, and those that do so are, therefore, Accused Lenovo Laptops. For example, but without limitation, as shown below Lenovo advertises and/or has advertised its LOQ (16" Intel) with RTX 4050 (Part # 82XW0011US) laptop as featuring a DisplayPort 1.4 media connectivity port.



*See* https://www.lenovo.com/us/en/p/laptops/loq-laptops/lenovo-loq-16irh8/82xw0011us  (last visited August 22, 2024) (arrows and highlighting added).

81.    DisplayPort Standard Version 1, Revision 4 ("DP v1.4"), with which the DisplayPort 1.4 port included with the Accused Lenovo Laptop described above complies, is an Infringing DP Standard as defined above and as further defined in the numbered counts below with respect to each of the General Video Patents.

82.    By way of additional example, but not limitation, as shown below, Lenovo advertises and/or has advertised its Legion 7i Gen 9 Intel (16″) with RTX™ 4060 (Product # 83FD008FUS) laptop as featuring two DisplayPort media connectivity ports, a "Thunderbolt™ 4 DisplayPort™ 1.4" port and a "USB-C 3.2 Gen 2 (DisplayPort™ 1.4)" port.

 

*See* https://www.lenovo.com/us/en/p/laptops/legion-laptops/legion-7-series/legion-7i-gen-9-(16-inch-intel)/83fd008fus (last visited August 22, 2024) (arrow and highlighting added).

83.    The Thunderbolt 4 DisplayPort 1.4 ports included with the Accused Lenovo Laptop described in above comply with, implement, and embody DP v1.4, an Infringing DP Standard as defined above and as further defined in the numbered counts below with respect to each of the General Video Patents. *See also* https://www.intel.com/content/www/us/en/gaming/resources/devices-make-the-most-out-of-thunderbolt-4.html ("A Thunderbolt 4 port gives you a multitude of monitor options. Connect Thunderbolt™ displays, DisplayPort 1.4 displays, or use a Thunderbolt™ adapter or dock to connect HDMI, DVI, and VGA displays. Your choice.").

84.    A non-exhaustive list of Accused Lenovo Laptops is included in the list of Accused Lenovo Products identified in Appendix A hereto.

85.    As shown below, Lenovo makes, uses, sells, and/or offers to sell in, and/or imports into, the United States, and/or has made, used, sold, and/or offered to sell in, and/or imported into, the United States, numerous models of desktop computer, covering several product lines.



*See,* https://www.lenovo.com/us/en/desktops/ (last visited August 22, 2024) (highlighting added).

86.    Based on information published on Lenovo's website, many of the desktop computers Lenovo sells and offers to sell, and/or has sold and offered to sell, comply with, implement, and/or embody the Infringing DP Standards, and those that do so are, therefore, Accused Lenovo Desktops. For example, but without limitation, as shown below Lenovo advertises its ThinkStation P3 Tower Workstation (Product # 30GS003AUS) desktop as having at least three DisplayPort media connectivity ports and up to eight more DisplayPort media connectivity ports:

> **Configure it any which way**
>
> With three onboard DisplayPorts, plus the ability to configure up to eight more, the ThinkStation P3 Tower can support up to 12 independent displays. And with heaps of speedy memory and SSD storage, plus five open PCIe slots for a variety of network and special purpose add-in-cards, this workstation can be configured to tackle your most exacting workflows.



*See, e.g.,* https://www.lenovo.com/us/en/p/workstations/thinkstation-p-series/thinkstation-p3-tower/30gs003aus (last visited August 22, 2024) (highlighting and annotations added).

87.    The DisplayPort 1.4 ports included with the Accused Lenovo Desktop described in above comply with, implement, and embody DP v1.4, an Infringing DP Standard as defined in above and as further defined in the numbered counts below with respect to each of the General Video Patents.

88.    By way of additional example, but not limitation, as shown below, Lenovo advertises and/or has advertised its Legion Tower 5i Gen 8 (Intel) with RTX 4070 (Product # 90UT000VUS) desktop as featuring at least three DisplayPort media connectivity port(s):



*See, e.g.,* https://www.lenovo.com/us/en/p/desktops/legion-desktops/legion-t-series-towers/-legion-tower-5i-gen-8-26l,-intel/90ut000vus (last visited August 22, 2024) (highlighting and annotations added).

89.     The three DisplayPort multimedia connectivity ports included with the Legion Tower 5i Accused Lenovo Desktop described above comply with, implement, and embody DP v1.4a, an Infringing DP Standard as defined above and as further defined in the numbered counts below with respect to each of the General Video Patents.

90.     A non-exhaustive list of Accused Lenovo Desktops is included in the list of Accused Lenovo Products identified in Appendix A hereto.

91.    As shown below, Lenovo makes, uses, sells, and/or offers to sell in, and/or imports into, the United States, and/or has made, used, sold, and/or offered to sell in, and/or imported into, the United States, numerous models of computer monitor, covering several brand categories.



*See, e.g.,* https://www.lenovo.com/us/en/dc/accessories-and-software/monitors?sortBy=bestSelling (last visited August 22, 2024) (highlighting added).

92.    Based on information published on Lenovo's website, the majority of computer monitors Lenovo sells and offers to sell, and/or has sold and offered to sell, comply with, implement, and/or embody the Infringing DP Standards, and those that do and/or have done so are, therefore, Accused Lenovo Monitors. As shown below, Lenovo makes, uses, sells, and/or offers to sell in, and/or imports into, the United States, and/or has made, used, sold, and/or offered to sell in, and/or imported into, the United States, numerous models of computer monitor under the heading "Connection Type: Display Port."



See, e.g., https://www.lenovo.com/us/en/dc/accessories-and-software/monitors?sortBy=bestSellin g&visibleDatas=703%3ADisplay%2520Port (last visited August 22, 2024) (highlighting added).

93.    By way of example, but without limitation, Lenovo advertises and/or has advertised its Lenovo 23.8 inch Monitor - Q24h-10 (Product # 66A8GCC6US) as featuring a DisplayPort media connectivity port:



### All About Versatile Connectivity and More

Lenovo Q24h-10 allows you to do more than just view your work. This extended USB-C Hub monitor offers a one-cable solution for power, data, video, and audio transfers. The Smart Power function detects overall power consumption and dynamically manages the power delivery to each USB device. It offers up to 80W1 of power delivery through the USB Type-C cable, reducing maximum power consumption. HDMI ports and DisplayPort enable seamless multitasking for you to connect the monitor to a laptop, smartphone, or any other smart device and work efficiently.

*See* https://www.lenovo.com/us/en/p/accessories-and-software/monitors/home/66a8gcc6us

(lasted visited August 22, 2024) (highlighting added).

94.    The DisplayPort media connectivity port included with the Accused Lenovo Monitor described above complies with, implements, and embodies an Infringing DP Standard as defined above and as further defined in the numbered counts below with respect to each of the General Video Patents.

95.    A non-exhaustive list of Accused Lenovo Monitors is included in the list of Accused Lenovo Products identified in Appendix A hereto.

96.    As shown below, Lenovo uses, sells, and/or offers to sell in, and/or imports into, the United States, and/or has made, used, sold, and/or offered to sell in, and/or imported into, the United States, numerous models of graphics card under several brands.



*See* https://www.lenovo.com/us/en/dc/accessories-and-software/graphics-cards?visibleDatas=706 %3AGraphics%2520Cards (last visited August 22, 2024) (highlighting added).

97.    Several of the graphics cards sold and offered for sale by Lenovo, and described above, comply with, implement, and/or embody the Infringing DP Standards, and those that do so are, therefore, Accused Lenovo Graphics Cards.

98.    By way of example, but without limitation, Lenovo advertises and/or has advertised the NVIDIA T400 4GB 3xmDP Graphics Card (Product # 4X61J52234) as featuring three DP v1.4a-compliant DisplayPort media connectivity ports:



*See* hhttps://www.lenovo.com/us/en/p/accessories-and-software/graphics-cards/graphics_cards/4x61j52234 (lasted visited August 22, 2024) (highlighting added).

99.     The three DisplayPort media connectivity ports included with the Accused Lenovo Graphics Card described above comply with, implement, and embody DP v1.4a, an Infringing DP Standard as defined 18 above and as further defined in the numbered counts below with respect to each of the General Video Patents.

100.    Lenovo advertises and/or has advertised on its website that the representative examples of Accused Lenovo Products described above, and currently advertises and/or has in the past advertised, that the numerous, specific Accused Lenovo Products identified in Appendix A hereto, comply with and utilize, or have in the past complied with and utilized, one or more of the Infringing DP Standards. In addition to Lenovo's own advertising representations in this regard, VESA identifies hundreds of Lenovo products as being "VESA CERTIFIED DISPLAYPORT PRODUCTS." *See, e.g.,* https://www.displayport.org/product-category/computing/?ps&pman%5B0%5D=lenovo (first of 10 search result pages identifying as Certified DisplayPort Products 75 Lenovo desktop, laptop, and all-in-one computers); https://www.displayport.org/product-category/monitors-tvs/?ps&pman%5B0%5D=lenovo (first of 12 search result pages identifying as Certified DisplayPort Products 96 Lenovo computer monitors, TVs, and DP displays).

101.    In addition to the Lenovo-branded products identified above, Lenovo makes, uses, sells, and/or offers to sell in, and/or imports into, and/or has made, used, sold, and/or offered to

sell in, and/or imported into, the United States, the United States Motorola-branded products that implement, purport to implement, are capable of implementing, practice, purport to practice, are capable of practicing, comply with, purport to comply with, or are capable of complying with one or more of the Infringing DP Standards. Further, Lenovo has in the past made, used, sold, and/or offered to sell in, and/or imported into, the United States Motorola-branded products that implemented, purported to implement, were capable of implementing, practiced, purported to practice, were capable of practicing, complied with, purported to comply with, or were capable of complying with one or more of the Infringing DP Standards. For the subgroup defined in this paragraph above, the aforementioned products are the "Accused Motorola Products." Collectively with the Accused Lenovo Products described in this Complaint above, the "Accused Motorola Products" are also "Accused Lenovo Products." On information and belief, Lenovo makes, uses, sells, and/or offers to sell in, and/or imports into, the United States, or has in the past made, used, sold, and/or offered to sell in, and/or imported into, the United States, at least the following Accused Motorola Products: Motorola Edge+ (2020); Motorola Edge 20 pro; Motorola Edge+ (2022); Motorola Edge 30 Fusion; Motorola Edge 30 Pro; Motorola Edge 30 Ultra; Motorola Edge 40 Pro; Motorola Edge+ (2023); Motorola Edge 50 pro; Motorola Edge 50 Ultra; Motorola Edge 2024; Motorola RAZR 2022; Moto G100; Moto G200 5G; and ThinkPhone by Motorola. On further information and belief, each of these Accused Motorola Products implements, purports to implement, is capable of implementing, practices, purports to practice, is capable of practicing, complies with, purports to comply with, or is capable of complying with one or more of the Infringing DP Standards, including, by way of example but not limitation, through DP Alt Mode connectivity. General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will

provide additional, specific evidentiary identifying other specific models of Accused Motorola Products that implement, purport to implement, are capable of implementing, practice, purport to practice, are capable of practicing, comply with, purport to comply with, or are capable of complying with one or more of the Infringing DP Standards, including, by way of example but not limitation, through DP Alt Mode connectivity. *See* Fed. R. Civ. P. 11(b)(3).

102.    In addition to the Lenovo-branded products identified above, Lenovo makes, uses, sells, and/or offers to sell in, and/or imports into, and/or substantively participates in and directs and/or controls the manufacture, use, sale, and/or offer for sale, and/or import into, the United States Fujitsu-branded products that implement, purport to implement, are capable of implementing, practice, purport to practice, are capable of practicing, comply with, purport to comply with, or are capable of complying with one or more of the Infringing DP Standards. Further, Lenovo has in the past made, used, sold, and/or offered to sell in, and/or imported into, the United States Fujitsu-branded products that implemented, purported to implement, were capable of implementing, practiced, purported to practice, were capable of practicing, complied with, purported to comply with, or were capable of complying with one or more of the Infringing DP Standards. For the subgroup defined in this paragraph above, the products are the "Accused Fujitsu Products." Collectively with the Accused Lenovo Products and the Accused Motorola Products described in this Complaint above, the "Accused Fujitsu Products" are also "Accused Lenovo Products." On information and belief, Lenovo makes, uses, sells, and/or offers to sell in, and/or imports into, the United States, or has in the past made, used, sold, and/or offered to sell in, and/or imported into, the United States, at least the following Accused Fujitsu Products:

- Fujitsu Accessory USB Type-C Port Replicator 2
- Fujitsu AIO Display P2410
- Fujitsu Display V2211
- Fujitsu Workstation CELSIUS M7010

- Fujitsu Business Notebook LIFEBOOK U5313X
- Fujitsu Business Notebook LIFEBOOK U9312X
- Fujitsu Business Notebook LIFEBOOK U9313X
- Fujitsu Business Notebook LIFEBOOK U939
- Fujitsu Business Notebook LIFEBOOK U939X
- Fujitsu Business Notebook LIFEBOOK U749
- Fujitsu Business Notebook LIFEBOOK U759
- Fujitsu Desktop ESPRIMO D7012
- Fujitsu Desktop ESPRIMO G6012
- Fujitsu Desktop ESPRIMO G9012
- Fujitsu Display B24-9 TS
- Fujitsu Display B27-9 TS FHD
- Fujitsu Display E22-8 TS Pro
- Fujitsu Display E24-8 TS Pro
- Fujitsu Display P34-9 US

- Fujitsu Workstation CELSIUS R970
- Fujitsu Workstation CELSIUS R970power
- Fujitsu Workstation CELSIUS W5010
- Fujitsu Workstation CELSIUS W5012
- PRIMERGY RX2450 M2 Rack Server
- PRIMERGY RX2540 M7 Rack Server
- PRIMERGY RX4770 M7 Rack Server
- PRIMERGY RX8770 M7 Rack Server
- PRIMERGY TX1310 M5 Tower Server
- PRIMERGY TX1320 M5 Tower Server
- PRIMERGY TX1330 M5 Tower Server
- PRIMERGY TX1330 M6 Tower Server
- PRIMERGY TX2550 M7 Tower Server
- FUJITSU Tablet STYLISTIC Q5010

On information and belief, each of these Accused Fujitsu Products implements, purports to implement, is capable of implementing, practices, purports to practice, is capable of practicing, complies with, purports to comply with, or is capable of complying with one or more of the Infringing DP Standards. On information and belief, as of at least as early as late 2019 and January 2020, Lenovo made, used, sold, and/or offered to sell in, and/or imported into, the United States,

at least the following the following other Accused Fujitsu Products: Fujitsu Business Notebook LIFEBOOK U939; Fujitsu Business Notebook LIFEBOOK U939X; Fujitsu Business Notebook LIFEBOOK U749; and Fujitsu Business Notebook LIFEBOOK U759. General Video states, on information and belief, formed after an inquiry reasonable under the circumstances, that a reasonable opportunity for further investigation and discovery will provide additional, specific evidentiary identifying other specific models of Accused Fujitsu Products that implement, purport to implement, are capable of implementing, practice, purport to practice, are capable of practicing, comply with, purport to comply with, or are capable of complying with one or more of the Infringing DP Standards. *See* Fed. R. Civ. P. 11(b)(3).

**LENOVO'S NOTICE AND KNOWLEDGE OF
ITS INFRINGEMENT OF THE ASSERTED PATENTS**

103. In early 2015, MPEG LA, a patent pool administration company, administered the DP License, which provided licensing rights to a portfolio of patents found by an independent patent consultant to each be essential to various respective DisplayPort standards, including DP v1.2, an Infringing DP Standard as defined above. In April 2023, MPEG LA was acquired by Via-LA. MPEG LA and Via-LA were granted authority to negotiate and enter into licenses to the Asserted Patents on behalf of General Video and its predecessors-in-interest.

104. MPEG LA, on behalf of General Video and its predecessors-in-interest, provided actual notice under 35 U.S.C. § 287 to Lenovo of the Asserted Patents and of its infringement of those patents in a number of ways. In the same ways, and others described below, Lenovo gained knowledge of the Asserted Patents and its infringement thereof.

105. *First*, on March 5, 2015, MPEG LA issued a press release (the "Release") announcing the DP License, which "provides coverage for a variety of digital interface technology standards used in connecting audio/video sources such as computer monitors, video projectors,

televisions, adaptors, personal computers, graphic cards, motherboards, storage devices, smartphones, tablets, flat panel displays, and cameras." (*See* Ex. 30.) The Release stated that the "Initial DisplayPort technology owners include Hitachi Maxell Ltd.; Koninklijke Philips N.V.; Silicon Image, Inc.; and Sony Corporation." The Release further stated that a copy of the DP License could be obtained at www.mpegla.com/main/programs/DisplayPort/Pages/AgreementExpress.aspx, included a summary of the license terms, and stated that "essential patents may be added at no additional royalty during the current term of the License." *See id*. On information and belief, a list of the patents being licensed under the DP License (the "DP License Portfolio") on a document called "DisplayPort Attachment 1" could also have been accessed at that website. On information and belief, copies of the DP License and DisplayPort Attachment 1 available from that site (and dated March 5, 2015) on or about March 5, 2015 are attached as Exhibits 31 and 32.

106.    On information and belief, MPEG LA's Release provided the industry, members of VESA, and, thus, Lenovo, including LGL and its subsidiaries, including its Codefendants named herein, with notice and knowledge that companies that made and sold products that implement the DisplayPort standards infringed the DP License Portfolio patents (including patents that would be later added to the DP License Portfolio). Thus, Lenovo, including LGL and its subsidiaries, including its Codefendants named herein, was on notice and had knowledge of the DP License, and upon information and belief, the DP License Portfolio patents, as early as March 5, 2015. Further, because the DP License Portfolio patents were asserted in the Release to be essential to the DisplayPort standards, Lenovo, including LGL and its subsidiaries, including its Codefendants named herein, was on notice and had knowledge that MPEG LA, on behalf of the patentee owners of the DP License Portfolio patents, was asserting that any and all Lenovo's

products that implement a DisplayPort standard necessarily infringed the essential patents that were at that time, or would later be, included in the DP License Portfolio.

107. Further, all versions of the DisplayPort standard include a general warning regarding patents that may be infringed by implementations of the standard. For example, DP v1.4 states in its Preface:

> Patents
>
> VESA draws attention to the fact that it is claimed that compliance with this Standard might involve the use of a patent or other intellectual property right (collectively, "IPR"). VESA takes no position concerning the evidence, validity, and scope of this IPR.
>
> The following holders of this IPR have assured VESA that they are willing to license the IPR on Reasonable And Non-Discriminatory (RAND) terms. The statement of the holder of this IPR is registered with VESA.
>
> [Listing patent holders, contact information, and patents and patent application numbers.]
>
> Attention is drawn to the possibility that some of the elements of this VESA Standard might be the subject of IPR other than those identified above. VESA shall not be held responsible for identifying any or all such IPR, and has made no inquiry into the possible existence of any such IPR.
>
> THIS STANDARD IS BEING OFFERED WITHOUT ANY WARRANTY WHATSOEVER, AND IN PARTICULAR, ANY WARRANTY OF NON-INFRINGEMENT IS EXPRESSLY DISCLAIMED. ANY IMPLEMENTATION OF THIS STANDARD SHALL BE MADE ENTIRELY AT THE IMPLEMENTER'S OWN RISK, AND NEITHER VESA, NOR ANY OF ITS MEMBERS OR SUBMITTERS, SHALL HAVE ANY LIABILITY WHATSOEVER TO ANY IMPLEMENTER OR THIRD PARTY FOR ANY DAMAGES OF ANY NATURE WHATSOEVER DIRECTLY OR INDIRECTLY ARISING FROM THE IMPLEMENTATION OF THIS STANDARD.

(Ex. 51, VESA DisplayPort (DP) Standard, Version 1.4, Feb. 23, 2016, at pp. 26-29 of 873.)

108. *Second*, on or around March 16, 2015, shortly after issuing the Release, MPEG LA, on behalf of General Video's predecessors-in-interest, sent a letter to John Leshinski, the Vice

President and Deputy General Counsel of Lenovo's subsidiary, Lenovo (United States) Inc., specifically providing Lenovo with notice of the DP License, that the patents included, and to later be included, in the DP License Portfolio were essential to the DisplayPort standards, and of Lenovo's need to acquire the DP License, and thus of Lenovo's DisplayPort implementing products' infringement of the patents in the DP License Portfolio. (*See* Ex. 39.) In particular, MPEG LA stated in the letter that Lenovo products "include DisplayPort technology . . . [and a]s a result, Lenovo would benefit from coverage under our DisplayPort Patent Portfolio License." (*Id*.) The letter further provided notice to Lenovo that the DP License "provides coverage under essential patents from multiple patents owners in a single License." (*Id*.) The letter also provided notice to Lenovo that (1) the DP License Portfolio patents had been found by an independent patent consultant to be essential to various DisplayPort standards, including DP v1.2, an Infringing DP Standard as defined above; and (2) Lenovo, as a "company that offer[ed] products with DisplayPort technology[,] need[ed] to be licensed under [those] essential patents and [would] benefit from the coverage that [the] DisplayPort License provides." (*Id*.) On information and belief, a copy of the DisplayPort Attachment 1 attached as Exhibit 31 was attached to the letter.

109.    On further information and belief, in the March 16, 2015, letter described above, MPEG LA, on behalf of General Video and its predecessors-in-interest, provided Lenovo with an unsigned proposed version of the DP License attached as Exhibit 32, in which MPEG LA, on behalf of General Video's predecessors-in-interest, advised Lenovo that (a) the "DP Patent Portfolio" included "the portfolio of DP Essential Patent(s) which are initially identified in Attachment 1 hereto, [and] which portfolio may be supplemented or reduced from time to time in accordance with the provisions of this Agreement," DP License § 1.7 (revised March 5, 2015), Exhibit 32 hereto, and (b) "amendments to Attachment 1 hereto, if any, shall be effective upon the

posting of the new Attachment 1 on the website of the Licensing Administrator and such posting shall constitute notice pursuant to this Section." *Id.* at § 7.2.1. On information and belief, MPEG LA also provided in the letter a presentation entitled "DisplayPort Patent Portfolio License Briefing," which presentation notified Lenovo that the list of DisplayPort essential patents, i.e., "DisplayPort Attachment 1," "is updated regularly" and can be found at "http://www.mpegla.com /main/programs/DisplayPort/Pages/PatentList.aspx." (*See* Ex. 40.)

110. By notifying Lenovo of the specific online Internet address of the webpage where updated versions of the DisplayPort Attachment 1 would be posted and by posting updated versions of DisplayPort Attachment 1 on that webpage as provided for in section 7.2.1 of the DP License, MPEG LA, as of the dates set forth below, provided Lenovo with notice and knowledge of the General Video Patents and infringement thereof by Lenovo's DisplayPort implementing products at least by MPEG LA's assertion that the patents listed in DisplayPort Attachment 1 are essential to the DisplayPort standards, that "[a] patent is essential if one or more of its claims is infringed by implementation of one or more DisplayPort ('DP') Specifications defined in" the DisplayPort standards, and that Lenovo had to obtain rights to those and the other patents in the DP License Portfolio by entering into the DP License:

- March 1, 2016: the 010 Patent (DisplayPort Attachment 1, revised 3/1/2016, Ex. 41 hereto);

- December 1, 2018: the 282 Patent, the 443 Patent, and the 224 Patent (DisplayPort Attachment 1, revised 12/1/2018, Ex. 42 hereto);

- June 1, 2021: the 437 Patent (DisplayPort Attachment 1, revised 6/1/2021, Ex. 43 hereto); and

- June 1, 2024: the 786 Patent (DisplayPort Attachment 1, revised 6/1/2024, Ex. 44 hereto).

111.     **_Third_**, on information and belief, after MPEG LA sent Lenovo the March 16, 2015, letter, MPEG pursued its licensing demand to Lenovo repeatedly through emails that included updated versions of the DisplayPort Attachment 1, which provided Lenovo further knowledge and notice of its infringement of the Asserted Patents by its DisplayPort implementing products. ██

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████ _See_ Exhibit 29. ██████████████

██████████████████████████████████████████

██████████████████ _See_ Exhibit 45. ████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████ _See id._

112.     Further, ████████████████████████████████

████████████████████████████████████ (_See_ Exs. 46, 47.)

██████████████████████████████████████████

████████ Further, in view of the information provided in MPEG LA's March 16, 2015 letter to Lenovo ████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████.

113.    The notice and knowledge of infringement provided to Lenovo for the 010 Patent, at least as described above, also provided Lenovo with notice and knowledge of its infringement of the 786 Patent because the 786 Patent is a child of 010 Patent.

114.    █████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████ (*See* Ex. 48.)

115.    ███████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████ (*See* Ex. 49.) ████████████████████████████ is attached as Exhibit 50. Accordingly, █████████████████████████████████████████

████████████. In view of the information provided in MPEG LA's March 16, 2015 letter to Lenovo █████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████.

116.    Further, on information and belief, communications between MPEG LA and Lenovo regarding the DP License and updated versions of DisplayPort Attachment 1 continued after ████████████ and, after a reasonable opportunity for further investigation or discovery, the evidence will likely show that such communications included MPEG LA providing, on June 1,

2021 or soon after, an updated version of DisplayPort Attachment 1 in physical or electronic form that lists the 437 Patent and, thus, Lenovo received further notice and knowledge of its infringement of the 437 Patent on June 1, 2021 or soon after. In view of the information provided in MPEG LA's March 16, 2015 letter to Lenovo ███████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████, the identification of the 437 Patents in any communication on or soon after June 1, 2021 of an updated DisplayPort Attachment 1 provided Lenovo notice and knowledge of Lenovo's infringement of the 437 Patent by its DisplayPort implementing products no later than on or soon after June 1, 2021.

117.    Further, while Lenovo received notice and knowledge of its infringement of the 282, 443 and 437 patents as described above, the 282 Patent includes only method claims, and General Video asserts infringement of only method claims of the 443 and 437 Patents in this Complaint, so 35 U.S.C. § 287's marking and notice requirements do not apply to those patents.

118.    On information and belief, over the course of the communications between MPEG LA and Lenovo regarding the DP License and updated versions of DisplayPort Attachment 1 as described in the paragraphs above, MPEG LA also provided Lenovo one or more versions of a cross-reference chart that showed illustrative claims from patents in the DisplayPort License and the sections of the DisplayPort Standards for which such illustrative claims are essential (collectively, the "Cross-Reference Charts"). On further information and belief, the version(s) of the Cross-Reference Charts MPEG LA provided Lenovo would be materially similar to the version of the charts attached as Group Exhibit 52 hereto. Each version of the standards identified in the Cross-Reference Charts for a given patent is materially the same as other versions of such

standards. MPEG LA previously made updated versions of the Cross-Reference Charts available for download from its web page https://web.archive.org/web/20181231115749/http://www.mpegla.com/main/programs/DisplayPort/Pages/Essentiality.aspx. On further information and belief, and after a reasonable opportunity for further investigation or discovery, the evidence will likely show that MPEG LA provided Lenovo with one or more versions of the cross-reference chart described in this paragraph above through direct communications and, in any event, MPEG LA did make the same available for download from the MPEG LA website as described above.

119.    On August 30, 2024, General Video filed a lawsuit against LGL for patent infringement in the Eastern District of Texas in the case styled as *General Video, LLC v. Lenovo Group Limited*, Case No. 5:24-cv-00122-RWS (the "E.D. Tex. Case"). General Video's complaint in the E.D. Tex. Case (the "E.D. Tex. Complaint") alleged LGL's infringement of the same Asserted Patents asserted in this Complaint. The E.D. Tex. Complaint also alleged infringement of each of the Asserted Patents by implementations of the same Infringing DP Standards described in this Complaint. Finally, the E.D. Tex. Complaint broadly identified the same set of Accused Lenovo Product described in this Complaint – namely, any products LGL (or any of its subsidiaries) has at any time made, used, sold, and/or offered for sale in, and/or imported into, the United States and that complied with, implemented, and/or embodied the Infringing DP Standards. (*Compare* E.D. Tex. Complaint ¶¶ 26-27, Dkt. No. 1, Case No. 5:24-cv-00122-RWS, *with* ¶¶ 69-70 *supra*.)

120.    On April 28, 2025, General Video served on LGL in the E.D. Tex. Case General Video's Disclosure of Asserted Claims and Infringement Contentions and Document Production Accompanying Such Disclosure pursuant to the Eastern District of Texas's Rules 3-1 and 3-2 of

the Rules of Practice for Patent Cases (General Video's "E.D. Tex. Initial Contentions"). In the

E.D. Tex. Initial Contentions,

> [General Video] identifie[d] … separately for each Asserted Claim, each accused apparatus, product, device, process, method, act, or other instrumentality of LGL's (or with respect to which LGL is liable) of which [General Video was then] aware. As part of its identifications pursuant to P. R. 3- 1(b)…, [General Video] cite[d] to Appendix A [t]hereto, a non-exhaustive list of products LGL makes, uses, sells, and/or offers to sell in, and/or imports into, the United States that, during operation, perform, comply with, and implement – and/or, regardless of current operative state, are capable of performing, complying with, and implementing during operation – one or more of the Infringing DP Standards (as that term [was] defined in the [E.D. Tex.] Complaint …) (collectively, the "Accused LGL Products"), and with respect to each Asserted Patent, respectively, Appendices B-K [thereto], each of which appendix, pursuant to P. R. 3-1(c), [was] a chart identifying specifically where and/or how each element of each Asserted Claim is found in the performance of, compliance with, and implementation of one or more of the Infringing DP Standards, as performed, complied with, and implemented by the Accused LGL Products.

(Ex. 33, E.D. Tex. Initial Contentions, E.D. Tex. Case.) On June 25 and July 30, 2025, respectively,

General Video served its first and second supplements to its Initial Contentions.

121.    In view of the aforementioned facts, and on information and belief, Lenovo (i) had

notice and knowledge of each Asserted Patent and its DisplayPort implementing products'

infringement of each Asserted Patent no later than when a respective Asserted Patent (or a family

member of each Asserted Patent) was added to the DisplayPort Attachment 1 document available

on MPEG LA's website and/or when MPEG LA provided Lenovo with a physical or electronic

copy of DisplayPort Attachment 1 identifying the Asserted Patent (or a family member thereof),

(ii) was generally warned by express statement in the DisplayPort standards about patent

infringement, and (iii) on information and belief, received through one or more versions of the

Cross-Reference Charts, further information bearing on its notice and knowledge of Asserted

Patents and its DisplayPort implementing products' infringement of the same. Further, Lenovo has

never to date identified any reason why it does not infringe the Asserted Patents and, nevertheless,

had never prior to the E.D. Tex. Complaint sought or obtained a license to the Asserted Patents. Instead, Lenovo has knowingly and willfully infringed, continues to knowingly and willfully infringe, induced and contributed to the infringement of, and continues to induce and contribute to the infringement of, the Asserted Patents (as detailed in the Counts below and in Appendices B-K) after receiving notice and knowledge of the Asserted Patents and its infringement of the Asserted Patents. Moreover, to the extent Lenovo did not have knowledge of the Asserted Patents and its infringement thereof, then – in view of the facts that (i) MPEG LA notified Lenovo that the patents listed in DisplayPort Attachment 1 are essential to the DisplayPort standards and, thus, Lenovo's DisplayPort implementing products necessarily infringe those patents, (ii) MPEG LA notified Lenovo that DisplayPort Attachment 1 would be updated to include additional essential patents and provided the specific Internet address of where the updates would be posted, and (iii) multiple versions of DisplayPort Attachment 1 listing one or more of the Asserted Patents were posted at that Internet address and sent by email directly to Lenovo – Lenovo was willfully blind to knowing of each Asserted Patent and MPEG LA's assertion that those patents are essential to the DisplayPort standards and, thus, necessarily infringed by the manufacture, sale, use, and importation of any and all of Lenovo's products that implement DisplayPort. Thus, on information and belief, Lenovo was provided with information by which it could only have reasonably subjectively believed there was a high probability that the Asserted Patents existed but took deliberate actions to avoid confirming, *i.e.*, was willfully blind to, the existence of each Asserted Patent and its infringement of the same by ignoring and frustrating many years of correspondence by MPEG LA regarding the DP License and the Asserted Patents, by not checking MPEG LA's website for updated versions of the DisplayPort Attachment 1, and by not identifying any reason why its products do not infringe the Asserted Patents. Finally, Lenovo has continued its

infringement of the Asserted Patents despite the additional specific notice and knowledge it received of such infringement upon receipt of the E.D. Tex. Complaint, the E.D. Tex. Initial Contentions, and General Video's first and second supplements thereto. For at least the foregoing reasons, Lenovo's infringement of the Asserted Patents is and was willful and deliberate and its inducement of and contribution to infringement is and was with knowledge of that infringement.

122.    Each of LGL and its subsidiaries, including its Codefendants named herein, received the pre-suit notice and knowledge of the Asserted Patents and Lenovo's infringement of the Asserted Patents. Such notice and knowledge are properly imputed to each of LGL and its subsidiaries, including its Codefendants named herein (as previously defined herein, the "Group"), because it is currently the Group's policy, and was the Group's policy at the time of the notice received and knowledge acquired, as described above, that each of the senior managers of *the Group*, acting in their respective leadership and management roles with *the Group*, including, as it pertains to this issue, the Senior Vice President of *the Group* and the Chief Legal and Corporate Responsibility Officer for *the Group's legal, IP,* government relations, and ESG matters globally (as described *supra*), serve in those roles as leaders and managers of LGL *and* its subsidiaries. Indeed, "Lenovo or 'Lenovo Group' or the 'Group' refers to *Lenovo Group Limited together with its subsidiaries*." (*See* n.2 *supra* (emphasis added).) Thus, notice received and knowledge acquired by the Group's legal and IP management officer and anyone working at such officer's direction, *was* and *is* notice to the Group. For example, ████████████████████

████████████████████████████████████████

(Ex. 29), worked on behalf of and at the direction of LGL and the Group in that she was "[p]rimarily responsible for Lenovo's *worldwide* licensing efforts particularly the development and implementation of *patent/IP licensing* and product protection strategies as well as facilitating

patent acquisitions and the IP aspects of Lenovo's … M&A activities." (*See* https://www.linkedin.com/in/kathryn-tsirigotis-43797923/ (emphasis added).) The U.S. Patent and Trademark Office's (the "PTO") patent database confirms that in coordinating Lenovo's worldwide patent licensing efforts, Ms. Tsirigotis was necessarily working at the direction and on behalf of the Group – i.e., LGL and its subsidiaries, including its Codefendants named herein. In this regard, the PTO's database confirms that the Group's major owners of U.S. patents are: Beijing Lenovo Software Ltd.; Codefendant Lenovo (Beijing) Limited; Lenovo (Beijing) Co., Ltd.; Lenovo (Singapore) Pte. Ltd.; Lenovo Enterprise Solutions (Singapore) Pte. Ltd.; Lenovo Innovations Limited (Hong Kong); Lenovo PC International; Lenovo International Limited; Lenovo Global Technologies Switzerland International GmbH; and Lenovo Switzerland International Gmbh. Similarly, ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ (Exs. 45-49), worked at the direction and on behalf of the Group, succeeded Ms. Tsirigotis who was responsible for the Group's worldwide patent/IP licensing efforts, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 45), ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see, e.g.,* Exs. 48-49). ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, including its Codefendants named herein, by virtue of the deep concerted action between LGL and its subsidiaries, including its Codefendants named herein, and the dominant degree of control LGL asserts over such subsidiaries and Codefendants, as alleged throughout this Complaint.

## COUNT I: THE 443 PATENT

123.    Appendix B hereto is an exemplary patent claim chart that details how the inventions of claims 7 and 9 of the 443 Patent were essential to implementations of DP v1.2,

relative to the transport of an audio stream between a source device (e.g., a desktop or laptop computer) and a sink device (e.g., a computer monitor or laptop display).[95] The versions of the DisplayPort standard listed below (and applying the "DP v" abbreviation) include features that are either identical to, or materially the same as, the features of DP v1.2 shown to infringe claims 7 and 9 of the 443 Patent in Appendix B hereto. As such, these versions of the standard also infringed the 443 Patent during the term of that patent:

- DP v1.1, introduced April 2, 2007;

- DP v1.1a, introduced January 11, 2008;

- DP v1.2a, introduced January 2013;

- DP v1.3, introduced September 15, 2014;

- DP v1.4, introduced March 1, 2016;

- DP v1.4a, introduced April 2018; and

- DP v2.0, introduced June 26, 2019

(collectively with DP v1.2, the "443 Infringing DP Standards"). Thus, whoever used one or more products to perform the methods described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, during the term of the 443 Patent, directly infringed claims 7 and 9 of that patent in violation of 35 U.S.C. § 271(a). *See, e.g, Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

---

[95] The 443 Patent expired on April 20, 2020.

124.    On information and belief, during the term of the 443 Patent, Lenovo directly infringed claims 7 and 9 of that patent by using Accused Lenovo Products in a manner that complied with the descriptions provided in Appendix B hereto with respect to DP v1.2, and the descriptions provided in the corresponding portions of the other 443 Infringing DP Standards.

125.    By way of example and not limitation, and on information and belief, during the term of the 443 Patent, Lenovo employees used the Accused Lenovo Products in such an infringing manner when transmitting audio signals from Accused Lenovo Laptops, Accused Lenovo Desktops, and any desktop computers with installed Accused Lenovo Graphics Cards[96] via a DisplayPort connection to Accused Lenovo Monitors, where such audio signals were played as audible sound through (i) one or more built-in speakers on the monitor(s), (ii) one or more external speakers connected to an audio line-out port on the monitor(s), or (iii) headphones or earphones connected to an audio line-out port on the monitor(s). On its website, Lenovo explains:

> Displayport and HDMI are two popular video and audio interfaces used to connect devices like computers, monitors, televisions (TVs), and gaming consoles. They both serve the same purpose of *transmitting high-quality audio and video signals* ... both Displayport and HDMI can *transmit audio signals alongside video*. This means you can connect your computer or other audio-video source to a monitor or television (TV) and have the sound play through the display's built-in speakers or an external audio system. Just make sure the connected devices support audio over the respective interface.

https://www.lenovo.com/us/en/glossary/displayport-vs-hdmi/ (emphasis added).

126.    During the term of the 443 Patent, Lenovo advertised Accused Lenovo Laptops, Desktops, Graphics Cards, and Monitors as supporting DisplayPort media connectivity. By way of example and not limitation, as of and before October 14, 2019, Lenovo made, used, offered for

---

[96] Relative to the Accused Lenovo Graphics Cards, the alleged direct infringement of method claims 7 and 9 of the 443 Patent by Lenovo and Lenovo customers in this Count I presumes performance of the claimed methods by Lenovo's and Lenovo's customers' use, in part, of computers having installed Accused Lenovo Graphics Cards.

sale, and sold its ThinkPad T490 Laptop, which featured a "USB 3.1 Gen 1\*\* Type-C (Power Delivery, DisplayPort, Data transfer)" media connectivity port along with a "USB 3.1 Gen 2\*\* Type-C / Intel Thunderbolt 3 (Power Delivery, DisplayPort, Data transfer)" media connectivity port.[97] By way of further example and not limitation, as of and before October 14, 2019, Lenovo made, used, offered for sale, and sold its ThinkStation P330 Tower, which featured "2 x DisplayPort" media connectivity ports and optional "4 x DisplayPort" media connectivity ports in the "Rear Ports & Slots" for "[s]upport[ing] up to 7 independent displays,"[98] By way of further example and not limitation, as of and before September 1, 2017, Lenovo at least offered for sale and sold the NVIDIA NVS 310 1GB Dual-DisplayPort Graphics Card (Part No.: 4X60K59923), which featured two DisplayPort media connectivity ports.[99] By way of still further example but not limitation, as of and before March 7, 2020, Lenovo made, used, offered for sale, and sold its Legion Y44w-10 43.4-inch WLED Curved Panel HDR Gaming Monitor (Part Number: 65EARAC1US),"[100] which featured a "USB Type-C 5G (DisplayPort DP 1.2 Alternate Mode)" and "USB Type-C 10G (DisplayPort DP 1.4 Alternate Mode)" input connectors along with an "Audio Out" jack that allowed users to "[c]onnect [a] speaker's audio cable and audio jack of

---

[97] *See, e.g.,* https:/www.lenovo.com (archived at *Wayback Machine*, https://web.archive.org/web/20191014002609/https://www.lenovo.com/us/en/laptops/thinkpad/thinkpad-t-series/T490/p/22TP2TT4900 (capture dated 10/14/2019)).

[98] *See, e.g.,* https://www.lenovo.com (archived at *Wayback Machine*, https://web.archive.org/web/20191014002501/https://www.lenovo.com/us/en/think-workstations/thinkstation-p-series-towers/ThinkStation-P330-Tower/p/WMD00000364 (capture dated 10/14/2019)).

[99] *See, e.g.,* https://www.lenovo.com (archived at *Wayback Machine*, https://web.archive.org/web/20170906183748/http://www3.lenovo.com/us/en/accessories-and-monitors/graphic-cards/graphic-cards/GRAPHIC-BO-NVS-310-1GB-Graphics-Card/p/4X60K59923 (capture dated 9/1/2017)).

[100] *See, e.g.,* https://www.lenovo.com (archived at *Wayback Machine*, https://web.archive.org/web/20200307072615/https://www.lenovo.com/us/en/accessories-and-monitors/monitors/c/monitors?q=%3Aprice-asc%3AfacetAcc-Type%3AGaming&uq=&text= (capture dated March 7, 2020)).

monitor to transfer audio source from DP, Type-C or HDMI." *See, e.g.,* User Manual pp. 1-6 and 1-10 available at https://download.lenovo.com/consumer/monitor/lenovo_y44w-10_ug_en.pdf.

127. By way of example and not limitation, and on information and belief, during the term of the 443 Patent, Lenovo employees used Accused Lenovo Products such as the Accused Lenovo Laptop, Desktop, Graphics Card, Accused Motorola Products, and Monitor described above, and other Accused Lenovo Laptops, Desktops, Graphics Cards, Accused Motorola Products, and Monitors, in the directly infringing manner described above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, when transmitting, receiving, playing, and/or recording audio signals at, between, and/or among Lenovo's offices and facilities in the United States. *See, e.g.,* https://www.lenovo.com/us/en/about/locations/ (identifying 8 Lenovo office locations in the United States). On information and belief, one of numerous examples of such directly infringing uses was when Lenovo employees participated in video conferences or Voice over Internet Protocol (VoIP) calls using an Accused Lenovo Laptop, Accused Lenovo Desktop, Accused Lenovo Graphics Card, or Accused Motorola Product (as defined herein) connected to an Accused Lenovo Monitor as described above.

128. On information and belief, during the term of the 443 Patent, another example of such directly infringing use was when Lenovo employees streamed or played recorded or real-time audio-video content using Accused Lenovo Laptops, Accused Lenovo Desktops, or Accused Lenovo Graphics Cards, such as those described above, and other Accused Lenovo Laptops, Desktops, and Graphics Cards connected to Accused Lenovo Monitors, such as the one described above, and other Accused Lenovo Monitors, in the manner generally described above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the

other 443 Infringing DP Standards. On information and belief, one of numerous examples of such directly infringing uses was when Lenovo employees played on an Accused Lenovo Laptop, Accused Lenovo Desktop, Accused Lenovo Graphics Card, or Accused Motorola Product connected to an Accused Lenovo Monitor as described above any of the hundreds of videos with audio content that Lenovo itself made available for streaming from its online Lenovo Technical Support. *See* https://support.lenovo.com/us/en.

129. On information and belief, during the term of the 443 Patent, Lenovo employees also used Accused Lenovo Products in the directly infringing manner described above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, when they demonstrated Accused Lenovo Products to actual and potential customers of Accused Lenovo Products at trade shows, during product demonstrations, and – generally – as part of Lenovo's marketing and sales operations. By way of example and not limitation, Lenovo attends and exhibits its products at the annual Consumer Electronics Show (CES) trade show. By way of further example and not limitation, the "Lenovo Legion Go" – an Accused Lenovo Laptop (see Appendix A) s honored as a "CES 2024 Innovation Award Product" at the 2023 CES, held in Las Vegas, Nevada, January 9 to January 12, 2024. https://www.ces.tech/innovation-awards/honorees/2024/honorees/l/lenovo-legion-go.aspx. The Lenovo Legion Go includes at least two DisplayPort 1.4 media connectivity ports (see e.g., https://www.lenovo.com/us/en/p/handheld/legion-go/len106g0001).

130. By way of further example and not limitation, the "ThinkPad X1 Fold," – an Accused Lenovo Laptop (see Appendix A) –, was honored as a "CES 2023 Innovation Award Product" at the 2023 CES, held in Las Vegas, Nevada, January 5 to January 8, 2023. https://www.ces.tech/innovation-awards/honorees/2023/honorees/t/thinkpad-x1-fold.aspx. The

ThinkPad X1 Fold 16 Gen 1 includes at least three DisplayPort 1.4a media connectivity ports. (*See e.g.*, https://psref.lenovo.com/syspool/Sys/PDF/ThinkPad/ThinkPad_X1_Fold_16_Gen_1/ThinkPad_X1_Fold_16_Gen_1_Spec.pdf ). During the term of the 443 Patent, Lenovo attended CES 2020, held in Las Vegas January 7 to 10, 2020. *See, e.g.,* https://news.lenovo.com/pressroom/press-releases/lenovo-breaks-barriers-with-new-consumer-technology-unveiled-at-ces-2020-2/. Among the numerous products Lenovo showcased at CES 2020 was its Lenovo IdeaPad Flex 5 Chromebook which featured two "USB-C 3.2 Gen 1 (support data transfer, Power Delivery 2.0 and DisplayPort™ 1.2)" media connectivity ports. *See, e.g.,* https://psref.lenovo.com/syspool/Sys/PDF/IdeaPad/IdeaPad_Flex_5_CB_13IML05/IdeaPad_Flex_5_CB_13IML05_Spec.PDF.

131.    On information and belief, during the term of the 443 Patent, Lenovo employees also used Accused Lenovo Products in the directly infringing manner described above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, when providing customer support to Lenovo's actual and potential customers. By way of example and not limitation, and on information and belief, Lenovo employees used Accused Lenovo Products when troubleshooting and resolving technical issues for Lenovo's actual and potential customers. In this regard, Lenovo offered during the term of the 443 Patent, and currently offers, robust technical support services, which services include telephone support, online support, and online support libraries and video libraries that feature articles, tutorials, and videos to assist in troubleshooting and maintaining Accused Lenovo Products. *See, e.g.,* https://www.lenovo.com/us/en/contact/; *see also* https://support.lenovo.com/us/en.

132.    By way of further example and not limitation, and on information and belief, during the term of the 443 Patent, Lenovo employees used and controlled Lenovo customers' Accused

Lenovo Products in the directly infringing manner described above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, when providing onsite assistance for customers' Accused Lenovo Products. Lenovo's Premium Care Plus, Premium Care, and Legion Ultimate Support provide "Onsite Repair Next Business Day . . . [i]f the issue can't be solved remotely, an onsite technician will be there within one business day." https://support.lenovo.com/us/en/warranty-upgrade-and-services/.

133.   On information and belief, during the term of the 443 Patent, Lenovo employees also used Accused Lenovo Products in the directly infringing manner described above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, when they tested the Accused Lenovo Products to confirm compliance with the portions of DP v1.2 described in Appendix B hereto and/or the portions of the other 443 Infringing DP Standards. On information and belief, Lenovo employees conducted at least some of the testing described in this paragraph using one or more of the "DisplayPort Authorized Test Tools" previously and still available via links on VESA's website. *See, e.g.,* https://vesa.org/authorized-test-tools/.

134.   Further, and on information and belief, with knowledge of the General Video Patents and the fact that its products infringe the Asserted Patents as described above, Lenovo actively induced infringement of at least claims 7 and 9 of the 443 Patent, during the term of that patent, in violation of 35 U.S.C. § 271(b). On information and belief, past users and customers of the Accused Lenovo Products directly infringed claims 7 and 9 of the 443 Patent when they used the Accused Lenovo Products for such products' ordinary, customary, and intended use, and, in particular, used Accused Lenovo Products in the directly infringing manner described in Appendix

B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards. On information and belief, Lenovo's affirmative acts of inducement included, without limitation and with specific intent to encourage the infringement due to the fact that, as discussed above, Lenovo had knowledge of the 443 Patent and that its products infringed the 443 Patent, having knowingly induced consumers to use the Accused Lenovo Products within the United States in the ordinary, customary, and intended way, and, in particular, in the directly infringing manner described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, by, directly or through intermediaries, having supplied such Accused Lenovo Products to customers within the United States and having instructed and encouraged such customers how to use the Accused Lenovo Products in the ordinary, customary, and intended way, and, in particular, in the directly infringing manner described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, which use, as discussed above, Lenovo knew, or was willfully blind to knowing, infringed claims 7 and 9 of the 443 Patent. Lenovo's affirmative acts of inducement further included, without limitation and with specific intent to encourage the infringement due to the fact that, as discussed above, Lenovo had knowledge of the 443 Patent and that its products infringed the 443 Patent, any one or a combination of encouraging and/or facilitating third-party infringement through having advertised, marketed, and disseminated the Accused Lenovo Products and components thereof, including DisplayPort firmware and/or drivers; and having created, published and/or provided sales, promotional, and marketing materials; supporting materials; product manuals; user guides; and/or technical support and other information relating to the Accused Lenovo Products and DisplayPort

functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from Lenovo's website) during the term of the 443 Patent.

135.    Further and in the alternative, on information and belief, with knowledge of the General Video Patents as described above, Lenovo contributed to the infringement of claims 7 and 9 of the 443 Patent, during the term of that patent, in violation of 35 U.S.C. § 271(c). Users and customers of the Accused Lenovo Products directly infringed claims 7 and 9 of the 443 Patent when they used the Accused Lenovo Products for such products' ordinary, customary, and intended use, and, in particular, in the directly infringing manner described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards. Lenovo's contributory infringement included, without limitation, Lenovo's sale and provision of Accused Lenovo Products, including DisplayPort components thereof, to customers in the United States for use in practicing claims 7 and 9 of the 443 Patent, during the term of that patent, knowing that such products and components were material to practicing the claimed inventions, were not staple articles or commodities of commerce suitable for substantial non-infringing use, and were especially made or especially adapted for use in an infringement of the 443 Patent. Specifically, as discussed above, Lenovo sold the Accused Lenovo Products to customers knowing that the customers' operation of such products directly infringed claims 7 and 9 of the 443 Patent when used for their normal and intended purpose, and, in particular, when used in the directly infringing manner described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards. The Accused Lenovo Products and DisplayPort components thereof were made for the specific purpose of operating as described in Appendix B hereto with respect to DP v1.2, and as described in such

corresponding portions of the other 443 Infringing DP Standards, and have no substantial non-infringing use.

136.    Thus, as discussed above, in addition to their acts of direct infringement as described throughout this Complaint, the Lenovo Defendants have also committed acts of indirect infringement at least by manufacturing products for the U.S. market, and/or directing them to the U.S. market, knowing they will cause infringement through import, sale, and/or use in United States. *See, e.g., Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012) ("[W]here a foreign party, with the requisite knowledge and intent, employs extraterritorial means to actively induce acts of direct infringement that occur within the United States, such conduct is not categorically exempt from redress under § 271(b).").

137.    On information and belief, and as discussed above, at least as of March 1, 2018, and no later than March 16, 2018, Lenovo knew of the 443 Patent and MPEG LA's assertion that Lenovo was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 39 hereto, MPEG LA's 3/16/2015 notice letter to Lenovo), ▮▮▮▮▮▮▮▮▮▮▮ (Exs. 49 and 50 hereto, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮.

138.    On information and belief, and as discussed above, to the extent Lenovo was unaware of the 443 Patent and MPEG LA's assertion that the 443 Patent is essential to the 443 Infringing DP Standards and Lenovo, as an implementer of the 443 Infringing DP Standards and, thus, an infringer of the 443 Patent, required a license under the DP License as of, or within a reasonable time after, ▮▮▮▮▮▮▮, then Lenovo should have known of the 443 Patent and

MPEG LA's assertion by then but was willfully blind to the existence of the 443 Patent and its infringement of the same. For at least the foregoing reasons, Lenovo's infringement of the 443 Patent was willful and deliberate.

## COUNT II: THE 224 PATENT

139.    Appendix C hereto is an exemplary patent claim chart that details how the inventions of claims 3 and 5 of the 224 Patent were essential to implementations of DP v1.2, relative to the receipt of audio data and audio-related information associated with such audio data.[101] The versions of the DisplayPort standard listed below include features that are identical to, or materially the same as, the features of DP v1.2 shown to infringe claims 3 and 5 of the 224 Patent in Appendix C hereto. As such, these versions of the standard also infringed the 224 Patent during the term of that patent:

- DP v1.1, introduced April 2, 2007;

- DP v1.1a, introduced January 11, 2008;

- DP v1.2a, introduced January 2013;

- DP v1.3, introduced September 15, 2014;

- DP v1.4, introduced March 1, 2016;

- DP v1.4a, introduced April 2018; and

- DP v2.0, introduced June 26, 2019

(collectively with DP v1.2, the "224 Infringing DP Standards"). Thus, whoever made, used, offered for sale, or sold any product that complied with, implemented, and/or embodied the portions of DP v1.2 described in Appendix C hereto, and/or complied with, implemented, and/or embodied the corresponding portions of the other 224 Infringing DP Standards, during the term of

---

[101] The 224 Patent expired on April 20, 2020.

the 224 Patent, directly infringed claims 3 and 5 of that patent in violation of 35 U.S.C. § 271(a). *See, e.g, Fujitsu*, 620 F.3d at 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

140.    During the term of the 224 Patent, Lenovo directly infringed at least claims 3 and 5 of that patent by making, using, selling, and/or offering to sell in, and/or importing into, the United States Accused Lenovo Products that complied with, implemented, and embodied the description provided in Appendix C hereto with respect to DP v1.2, and the descriptions provided in the corresponding portions of the other 224 Infringing DP Standards.

141.    By way of example and not limitation, and on information and belief, during the term of the 224 Patent, Lenovo directly infringed at least claims 3 and 5 of that patent by selling and offering to sell Accused Lenovo Products such as certain Accused Lenovo Monitors, that included a receiver operable to analyze and process audio data and audio-related information associated with the audio data in the infringing manner described in Appendix C hereto. *See, e.g., Sorrell Holdings, LLC v. Infinity Headwear & Apparel, LLC*, 2024 WL 413432, at *3 (Fed. Cir. Feb. 5, 2024) ("For an 'accused device[] to be infringing, [it] need only be capable operating' in the infringing manner.") (bracketed text in original) (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991)). Evidence of actual operation is not required to prove infringement of apparatus claims 3 and 5 of the 224 Patent. However, on information and belief, there are numerous examples of Accused Lenovo Monitors actually operating in the infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, during the term of the 224 Patent.

An example is whenever audio signals were transmitted from Accused Lenovo Laptops, Accused Lenovo Desktops, Accused Motorola Products, and any desktop computer with installed Accused Lenovo Graphics Cards[102] via a DisplayPort connection to Accused Lenovo Monitors, where such audio signals were capable of being played as audible sound through (i) one or more built-in speakers on the monitor(s), (ii) one or more external speakers connected to an audio line-out port on the monitor(s), or (iii) headphones or earphones connected to an audio line-out port on the monitor(s). On its website, Lenovo explains:

> Displayport and HDMI are two popular video and audio interfaces used to connect devices like computers, monitors, televisions (TVs), and gaming consoles. They both serve the same purpose of *transmitting high-quality audio and video signals .
> . .* both Displayport and HDMI can *transmit audio signals alongside video*. This means you can connect your computer or other audio-video source to a monitor or television (TV) and have the sound play through the display's built-in speakers or an external audio system. Just make sure the connected devices support audio over the respective interface.

https://www.lenovo.com/us/en/glossary/displayport-vs-hdmi/ (emphasis added).

142.    During the term of the 224 Patent, Lenovo advertised Accused Lenovo Monitors as supporting DisplayPort media connectivity, including audio connectivity. By way of example and not limitation, as of and before April 16, 2020, Lenovo made, used, offered for sale, and sold its By way of still further example but not limitation, as of and before March 7, 2020, Lenovo made, used, offered for sale, and sold its Legion Y44w-10 43.4-inch WLED Curved Panel HDR Gaming Monitor (Part Number: 65EARAC1US),"[103] which featured a "USB Type-C 5G (DisplayPort DP 1.2 Alternate Mode)" and "USB Type-C 10G (DisplayPort DP 1.4 Alternate Mode)" input

---

[102] Relative to the Accused Lenovo Graphics Cards, the alleged direct infringement of claims 3 and 5 of the 224 Patent by Lenovo and Lenovo customers in this Count II presumes operation by Lenovo and Lenovo customers, in part, of computers having installed Accused Lenovo Graphics Cards.

[103] *See, e.g.,* https://www.lenovo.com (archived at *Wayback Machine*, https://web.archive.org/web/20200307 072615/https://www.lenovo.com/us/en/accessories-and-monitors/monitors/c/monitors?q=%3Aprice-asc%3AfacetAc c-Type%3AGaming&uq=&text= (capture dated March 7, 2020)).

connectors along with an "Audio Out" jack that allowed users to "[c]onnect [a] speaker's audio cable and audio jack of monitor to transfer audio source from DP, Type-C or HDMI." *See, e.g.,* User Manual pp. 1-6 and 1-10 available at https://download.lenovo.com/consumer/monitor/lenovo _y44w-10_ug_en.pdf. This and any other Accused Lenovo Monitor sold and offered for sale before the April 20, 2020, expiration of the 224 Patent that supported media connectivity using an Infringing DP Standard and included either an audio line-out and/or built-in speakers infringed at least claims 3 and 5 of the 224 Patent.

143.    On information and belief, and in addition to Lenovo's direct infringement as described above, during the term of the 224 Patent, Lenovo directly infringed at least claims 3 and 5 of the 224 Patent by using Accused Lenovo Monitors in the directly infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards.

144.    By way of example and not limitation, and on information and belief, during the term of the 224 Patent, Lenovo employees used Accused Lenovo Monitors in such an infringing manner when transmitting audio signals from Accused Lenovo Laptops, Accused Lenovo Desktops, and Acccused Lenovo Graphics Cards via a DisplayPort connection to Accused Lenovo Monitors, where, as discussed in the paragraphs above, such audio signals were played as audible sound through (i) one or more built-in speakers on the monitor(s), (ii) one or more external speakers connected to an audio line-out port on the monitor(s), or (iii) headphones or earphones connected to an audio line-out port on the monitor(s).

145.    By way of example and not limitation, and on information and belief, during the term of the 224 Patent, Lenovo employees used Accused Lenovo Monitors in the directly infringing manner described above, described in Appendix C hereto with respect to DP v1.2, and

described in the corresponding portions of the other 224 Infringing DP Standards, when transmitting, receiving, playing, and/or recording audio signals at, between, and/or among Lenovo's offices and facilities in the United States. *See, e.g.,* https://www.lenovo.com/us/en/about/locations/ (identifying 8 Lenovo office locations in the United States). On information and belief, one of numerous examples of such directly infringing uses was when Lenovo employees participated in video conferences or Voice over Internet Protocol (VoIP) calls using an Accused Lenovo Laptop, Accused Lenovo Desktop, Accused Motorola Product, or Accused Lenovo Graphics Card connected to an Accused Lenovo Monitor as described above.

146. On information and belief, another example of such directly infringing use during the term of the 224 Patent was when Lenovo employees streamed or played recorded or real-time audio-video content using Accused Lenovo Laptops, Accused Lenovo Desktops, or Accused Lenovo Graphics Cards, such as those described above, and other Accused Lenovo Laptops, Desktops, and Graphics Cards connected to Accused Lenovo Monitors, such as the one described above, and other Accused Lenovo Monitors, in the manner generally described above, described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards. On information and belief, one of numerous examples of such directly infringing uses was when Lenovo employees played on an Accused Lenovo Laptop, Accused Lenovo Desktop, Accused Motorola Product, or Accused Lenovo Graphics Card connected to an Accused Lenovo Monitor as described above any of the hundreds of videos with audio content that Lenovo itself made available for streaming from its online Lenovo Technical Support. *See* https://support.lenovo.com/us/en.

147. On information and belief, during the term of the 224 Patent, Lenovo employees also used Accused Lenovo Monitors in the directly infringing manner described above, described

in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, when they demonstrated Accused Lenovo Products to actual and potential customers of Accused Lenovo Products at trade shows, during product demonstrations, and – generally – as part of Lenovo's marketing and sales operations. By way of example and not limitation, Lenovo attends and exhibits its products at the annual Consumer Electronics Show (CES) trade show. By way of further example and not limitation, the "Lenovo Legion Go" – an Accused Lenovo Laptop (see Appendix A) s honored as a "CES 2024 Innovation Award Product" at the 2023 CES, held in Las Vegas, Nevada, January 9 to January 12, 2024. https://www.ces.tech/innovation-awards/honorees/2024/honorees/l/lenovo-legion-go.aspx. The Lenovo Legion Go includes at least two DisplayPort 1.4 media connectivity ports (see e.g., https://www.lenovo.com/us/en/p/handheld/legion-go/len106g0001).

148.    By way of further example and not limitation, the "ThinkPad X1 Fold," – an Accused Lenovo Laptop (*see* Appendix A) –, was honored as a "CES 2023 Innovation Award Product" at the 2023 CES, held in Las Vegas, Nevada, January 5 to January 8, 2023. https://www.ces.tech/innovation-awards/honorees/2023/honorees/t/thinkpad-x1-fold.aspx. The ThinkPad X1 Fold 16 Gen 1 includes at least three DisplayPort 1.4a media connectivity ports. (*See e.g.*, https://psref.lenovo.com/syspool/Sys/PDF/ThinkPad/ThinkPad_X1_Fold_16_Gen_1/ThinkPad_X1_Fold_16_Gen_1_Spec.pdf ). During the term of the 443 Patent, Lenovo attended CES 2020, held in Las Vegas January 7 to 10, 2020. *See, e.g.,* https://news.lenovo.com/pressroom/press-releases/lenovo-breaks-barriers-with-new-consumer-technology-unveiled-at-ces-2020-2/. Among the numerous products Lenovo showcased at CES 2020 was its Lenovo IdeaPad Flex 5 Chromebook which featured two "USB-C 3.2 Gen 1 (support data transfer, Power Delivery 2.0

and DisplayPort™ 1.2)" media connectivity ports. *See, e.g.,* https://psref.lenovo.com/syspool/ Sys/PDF/IdeaPad/IdeaPad_Flex_5_CB_13IML05/IdeaPad_Flex_5_CB_13IML05_Spec.PDF.

149.    On information and belief, during the term of the 224 Patent, Lenovo employees also used Accused Lenovo Monitors in the directly infringing manner described above, described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, when providing customer support to Lenovo's actual and potential customers. By way of example and not limitation, and on information and belief, Lenovo employees used Accused Lenovo Products when troubleshooting and resolving technical issues for Lenovo's actual and potential customers. In this regard, Lenovo offered during the term of the 224 Patent, and currently offers, robust technical support services, which services include telephone support, online support, and online support libraries and video libraries that feature articles, tutorials, and videos to assist in troubleshooting and maintaining Accused Lenovo Products. *See, e.g.,* https://www.lenovo.com/us/en/contact/; *see also* https://support.lenovo.com/ us/en.

150.    By way of further example and not limitation, and on information and belief, during the term of the 224 Patent, Lenovo employees used and controlled Lenovo customers' Accused Lenovo Monitors in the directly infringing manner described above, described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, when providing onsite assistance for customers' Accused Lenovo Products. Lenovo's Premium Care Plus, Premium Care, and Legion Ultimate Support provide "Onsite Repair Next Business Day . . . [i]f the issue can't be solved remotely, an onsite technician will be there within one business day." https://support.lenovo.com/us/en/warranty-upgrade-and-services/.

151.    On information and belief, during the term of the 224 Patent, Lenovo employees also used Accused Lenovo Monitors in the directly infringing manner described above, described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, when they tested the Accused Lenovo Monitors to confirm compliance with the portions of DP v1.2 described in Appendix C hereto and/or the corresponding portions of the other 224 Infringing DP Standards. On information and belief, Lenovo employees conducted at least some of the testing described in this paragraph using one or more of the "DisplayPort Authorized Test Tools" previously and still available via links on VESA's website. *See, e.g.,* https://vesa.org/authorized-test-tools/.

152.    Further, and on information and belief, with knowledge of the General Video Patents and the fact that its products infringe the General Video Patents as described above, Lenovo actively induced infringement of at least claims 3 and 5 of the 224 Patent, during the term of that patent, in violation of 35 U.S.C. § 271(b). On information and belief, past users and customers of the Accused Lenovo Products directly infringed at least claims 3 and 5 of the 224 Patent when they used the Accused Lenovo Products for such products' ordinary, customary, and intended use, and, in particular, used Accused Lenovo Products in the directly infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards. On information and belief, Lenovo's affirmative acts of inducement included, without limitation and with specific intent to encourage the infringement due to the fact that, as discussed above, Lenovo had knowledge of the 224 Patent and that its products infringed the 224 Patent, having knowingly induced consumers to use the Accused Lenovo Products within the United States in the ordinary, customary, and intended way, and, in particular, in the directly infringing manner described in Appendix C hereto with respect to DP

v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, by, directly or through intermediaries, having supplied such Accused Lenovo Products to customers within the United States and having instructed and encouraged such customers how to use the Accused Lenovo Products in the ordinary, customary, and intended way, and, in particular, in the directly infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, which use, as discussed above, Lenovo knew, or was willfully blind to knowing, infringed at least claims 3 and 5 of the 224 Patent. Lenovo's affirmative acts of inducement further included, without limitation and with specific intent to encourage the infringement due to the fact that, as discussed above, Lenovo had knowledge of the 224 Patent and that its products infringed the 224 Patent, any one or a combination of encouraging and/or facilitating third-party infringement through having advertised, marketed, and disseminated the Accused Lenovo Products and components thereof, including DisplayPort firmware and/or drivers; and having created, published and/or provided sales, promotional, and marketing materials; supporting materials; product manuals; user guides; and/or technical support and other information relating to the Accused Lenovo Products and DisplayPort functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from Lenovo's website) during the term of the 224 Patent.

153.    Further and in the alternative, on information and belief, with knowledge of the General Video Patents as described above, Lenovo contributed to the infringement of at least claims 3 and 5 of the 224 Patent, during the term of that patent, in violation of 35 U.S.C. § 271(c). Users and customers of the Accused Lenovo Products directly infringed at least claims 3 and 5 of the 224 Patent when they used the Accused Lenovo Products for such products' ordinary, customary, and intended use, and, in particular, in the directly infringing manner described in

Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards. Lenovo's contributory infringement included, without limitation, Lenovo's sale and provision of Accused Lenovo Products, including DisplayPort components thereof, to customers in the United States for use in practicing at least claims 3 and 5 of the 224 Patent, during the term of that patent, knowing that such products and components were material to practicing the claimed inventions, were not staple articles or commodities of commerce suitable for substantial non-infringing use, and were especially made or especially adapted for use in an infringement of the 224 Patent. Specifically, as discussed above, Lenovo sold the Accused Lenovo Products to customers knowing that the customers' operation of such products directly infringed at least claims 3 and 5 of the 224 Patent when used for their normal and intended purpose, and, in particular, when used in the directly infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards. The Accused Lenovo Products and DisplayPort components thereof were made for the specific purpose of operating according to the one or more of the Infringing DP Standards and had no substantial non-infringing use.

154. Thus, as discussed above, in addition to their acts of direct infringement as described throughout this Complaint, the Lenovo Defendants have also committed acts of indirect infringement at least by manufacturing products for the U.S. market, and/or directing them to the U.S. market, knowing they will cause infringement through import, sale, and/or use in United States. *See, e.g., Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012) ("[W]here a foreign party, with the requisite knowledge and intent, employs extraterritorial means to actively induce acts of direct infringement that occur within the United States, such conduct is not categorically exempt from redress under § 271(b).").

155.    On information and belief, and as discussed above, as of March 1, 2018, and not later than March 16, 2018, Lenovo knew of the 224 Patent and MPEG LA's assertion that Lenovo was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 39 hereto, MPEG LA's 3/16/2015 notice letter to Lenovo), ███████████████ (Exs. 49 and 50 hereto, ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ .

156.    On information and belief, and as discussed above, to the extent Lenovo was unaware of the 224 Patent and MPEG LA's assertion that the 224 Patent is essential to the 224 Infringing DP Standards and Lenovo, as an implementer of the 224 Infringing DP Standards and, thus, an infringer of the 224 Patent, required a license under the DP License as of, or within a reasonable time after, ████████████, then Lenovo should have known of the 224 Patent and MPEG LA's assertion by then but was willfully blind to the existence of the 224 Patent and its infringement of the same. For at least the foregoing reasons, Lenovo's infringement of the 224 Patent was willful and deliberate.

## COUNT III: THE 282 PATENT

157.    Appendix D hereto is an exemplary patent claim chart that details how the invention of claim 1 of the 282 Patent is essential to implementations of DP v1.2, relative to the bi-directional transmission of data between a source device (e.g., a desktop or laptop computer) and a sink device (e.g., a computer monitor). The versions of the DisplayPort and eDP standards listed below include features that are either identical to, or materially the same as, the features of DP v1.2 shown to infringe claim 1 of the 282 Patent in Appendix D hereto. As such, these versions of the DisplayPort and eDP standards also infringe the 282 Patent:

- DP v1.1, introduced April 2, 2007;

- DP v1.1a, introduced January 11, 2008;

- DP v1.2a, introduced January 2013;

- DP v1.3, introduced September 15, 2014;

- DP v1.4, introduced March 1, 2016;

- DP v1.4a, introduced April 2018;

- DP v2.0, introduced June 26, 2019; and

- DP v2.1, introduced October 17, 2022

- eDP v1.1, introduced October 2009;

- eDP v1.2, introduced May 2010;

- eDP v1.3, introduced February 2011;

- eDP v1.4, introduced February 2013;

- eDP v1.4a, introduced February 2015;

- eDP v1.4b, introduced October 2015; and

- eDP v1.5, introduced October 2021

(collectively with DP v1.2, the "282 Infringing DP Standards"). Thus, whoever used one or more products to perform the methods described in Appendix D hereto with respect to DP v1.2, and described in the corresponding portions of the other 282 Infringing DP Standards, during the term of the 282 Patent, directly infringed claim 1 of the 282 Patent in violation of 35 U.S.C. § 271(a). *See, e.g, Fujitsu*, 620 F.3d at 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

158. On information and belief, during the term of the 282 Patent, Lenovo directly infringed at least claim 1 of the 282 Patent by using Accused Lenovo Products in a manner that complied with the description provided in Appendix D hereto with respect to DP v1.2, and the descriptions provided in the corresponding portions of the other 282 Infringing DP Standards.

159. By way of example and not limitation, and on information and belief, during the term of the 282 Patent, Lenovo employees used the Accused Lenovo Products in such a directly

infringing manner when transmitting data, such as video and audio data, from Accused Lenovo

Laptops, Accused Lenovo Desktops, and any desktop computers with installed Accused Lenovo

Graphics Cards[104] via a DisplayPort connection to Accused Lenovo Monitors. On its website,

Lenovo explains:

> Displayport and HDMI are two popular video and audio interfaces used to connect devices like computers, monitors, televisions (TVs), and gaming consoles. They both serve the same purpose of *transmitting high-quality audio and video signals . . .* both Displayport and HDMI can *transmit audio signals alongside video*. This means you can connect your computer or other audio-video source to a monitor or television (TV) and have the sound play through the display's built-in speakers or an external audio system. Just make sure the connected devices support audio over the respective interface.

https://www.lenovo.com/us/en/glossary/displayport-vs-hdmi/ (emphasis added). As explained

above, Lenovo advertises all the Accused Lenovo Laptops, Desktops, Graphics Cards, and

Monitors as supporting DisplayPort media connectivity. By way of further example and not

limitation, and on information and belief, during the term of the 282 Patent, Lenovo employees

and Lenovo customers also used Accused Lenovo Laptops in a directly infringing manner during

any operation of an Accused Lenovo Laptop because such operation complied with the description

provided in Appendix D hereto with respect to DP v1.2, and the descriptions provided in the

corresponding portions of the other 282 Infringing DP Standards, including the corresponding

portions of the eDP subset of such 282 Infringing DP Standards, by facilitating the bi-directional

transmission of data between such Accused Lenovo Laptop's iGPU/dGPU and such Accused

Lenovo Laptop's screen/display as recited in claim 1 of the 282 Patent. The independent ground

for direct infringement by standalone use of an Accused Lenovo Laptop described in the preceding

---

[104] Relative to the Accused Lenovo Graphics Cards, the alleged direct infringement of method claim 1 of the 282 Patent by Lenovo and Lenovo customers in this Count III presumes performance of the claimed methods by Lenovo's and Lenovo's customers' use, in part, of computers having installed Accused Lenovo Graphics Cards.

sentence applies in addition to, and irrespective of, the several examples of direct infringement by Lenovo employees and Lenovo customers described below.

160.     By way of example and not limitation, and on information and belief, during the term of the 282 Patent, Lenovo employees used Accused Lenovo Products in a manner that directly infringed claim 1 of the 282 Patent as described above, as described in Appendix D hereto with respect to DP v1.2, and as described in the corresponding portions of the other 282 Infringing DP Standards, when operating Accused Lenovo Laptops, Accused Lenovo Desktops, and Accused Lenovo Graphics Cards connected to Accused Lenovo Monitors via a DisplayPort connection at, between, and/or among Lenovo's offices and facilities in the United States. *See, e.g.,* https://www.lenovo.com/us/en/about/locations/ (identifying 8 Lenovo office locations in the United States). On information and belief, one of numerous examples of such directly infringing uses occurred when Lenovo employees participated in video conferences or Voice over Internet Protocol (VoIP) calls using an Accused Lenovo Laptop, Accused Lenovo Desktop, Accused Motorola Product, or Accused Lenovo Graphics Card connected to an Accused Lenovo Monitor as described above.

161.     On information and belief, another example of Lenovo employees having used Accused Lenovo Products in a manner that directly infringed claim 1 of the 282 Patent during the term of that patent was when Lenovo employees streamed or played recorded or real-time video content using an Accused Lenovo Laptop, Accused Lenovo Desktop, or Accused Lenovo Graphics Card connected to an Accused Lenovo Monitor via a DisplayPort connection as described above. On information and belief, one of numerous examples of such directly infringing uses was when Lenovo employees played on an Accused Lenovo Laptop, Accused Lenovo Desktop, Accused Motorola Product, or Accused Lenovo Graphics Card connected to an Accused Lenovo Monitor

as described above any of the hundreds of videos with audio content that Lenovo itself makes available for streaming from its online Lenovo Technical Support. *See* https://support.lenovo.com/us/en.

162.    On information and belief, during the term of the 282 Patent, Lenovo employees also used Accused Lenovo Products in a manner that directly infringes claim 1 of the 282 Patent as described above, as described in Appendix D hereto with respect to DP v1.2, and as described in the corresponding portions of the other 282 Infringing DP Standards, when they demonstrated Accused Lenovo Products to actual and potential customers of Accused Lenovo Products at trade shows, during product demonstrations, and – generally – as part of Lenovo's marketing and sales operations. By way of example and not limitation, Lenovo attended and exhibited its products at the annual Consumer Electronics Show (CES) trade show. By way of further example and not limitation, the "Lenovo Legion Go" – an Accused Lenovo Laptop (see Appendix A) was honored as a "CES 2024 Innovation Award Product" at the 2023 CES, held in Las Vegas, Nevada, January 9 to January 12, 2024. https://www.ces.tech/innovation-awards/honorees/2024/honorees/l/lenovo-legion-go.aspx. The Lenovo Legion Go included at least two DisplayPort 1.4 media connectivity ports (see e.g., https://www.lenovo.com/us/en/p/handheld/legion-go/len106g0001).

163.    By way of further example and not limitation, the "ThinkPad X1 Fold," – an Accused Lenovo Laptop (see Appendix A) –, was honored as a "CES 2023 Innovation Award Product" at the 2023 CES, held in Las Vegas, Nevada, January 5 to January 8, 2023. https://www.ces.tech/innovation-awards/honorees/2023/honorees/t/thinkpad-x1-fold.aspx.    The ThinkPad X1 Fold 16 Gen 1 included at least three DisplayPort 1.4a media connectivity ports. (*See e.g.,* https://psref.lenovo.com/syspool/Sys/PDF/ThinkPad/ThinkPad_X1_Fold_16_Gen_1/Think Pad_X1_Fold_16_Gen_1_Spec.pdf ). During the term of the 282 Patent, Lenovo attended CES

2020, held in Las Vegas January 7 to 10, 2020. *See, e.g.,* https://news.lenovo.com/press room/press-releases/lenovo-breaks-barriers-with-new-consumer-technology-unveiled-at-ces-2 020-2/. Among the numerous products Lenovo showcased at CES 2020 was its Lenovo IdeaPad Flex 5 Chromebook which featured two "USB-C 3.2 Gen 1 (support data transfer, Power Delivery 2.0 and DisplayPort™ 1.2)" media connectivity ports. *See, e.g.,* https://psref.lenovo.com/syspool/ Sys/PDF/IdeaPad/IdeaPad_Flex_5_CB_13IML05/IdeaPad_Flex_5_CB_13IML05_Spec.PDF.

164.    On information and belief, during the term of the 282 Patent, Lenovo employees also used Accused Lenovo Products in a manner that directly infringed claim 1 of the 282 Patent as described above, as described in Appendix D hereto with respect to DP v1.2, and as described in the corresponding portions of the 282 Infringing DP Standards, when providing customer support to Lenovo's actual and potential customers. By way of example and not limitation, and on information and belief, during the term of the 282 Patent, Lenovo employees used Accused Lenovo Products in such a directly infringing manner when troubleshooting and resolving technical issues for Lenovo's actual and potential customers. In this regard, Lenovo offers robust technical support services, which services include telephone support, online support, and online support libraries and video libraries that feature articles, tutorials, and videos to assist in troubleshooting and maintaining Accused Lenovo Products. *See, e.g.,* https://www.lenovo.com/us/en/contact/; *see also* https://support.lenovo.com/us/en.

165.    By way of further example and not limitation, and on information and belief, during the term of the 282 Patent, Lenovo employees used and controlled Lenovo customers' Accused Lenovo Products in the directly infringing manner described above, described in Appendix D hereto with respect to DP v1.2, and described in the corresponding portions of the other 282 Infringing DP Standards, when providing onsite assistance for customers' Accused Lenovo

Products. Lenovo's Premium Care Plus, Premium Care, and Legion Ultimate Support provide "Onsite Repair Next Business Day . . . [i]f the issue can't be solved remotely, an onsite technician will be there within one business day." https://support.lenovo.com/us/en/warranty-upgrade-and-services/.

166.    On information and belief, during the term of the 282 Patent, Lenovo employees also used Accused Lenovo Products in the directly infringing manner described in Appendix D hereto with respect to DP v1.2, and described in the corresponding portions of the other 282 Infringing DP Standards, when they tested the Accused Lenovo Products to confirm compliance with the portions of DP v1.2 described in Appendix D hereto and/or the corresponding portions of the other 282 Infringing DP Standards. On information and belief, Lenovo employees conducted at least some of the testing described in this paragraph using one or more of the "DisplayPort Authorized Test Tools" made available via links on VESA's website. *See, e.g.,* https://vesa.org/authorized-test-tools/.

167.    Further, and on information and belief, during the term of the 282 Patent, and with knowledge of the General Video Patents and the fact that its products infringed the General Video Patents as described above, Lenovo actively induced infringement of at least claim 1 of the 282 Patent in violation of 35 U.S.C. § 271(b). Users and customers of the Accused Lenovo Products directly infringed at least claim 1 of the 282 Patent when they used the Accused Lenovo Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix D hereto with respect to DP v1.2, as described in the corresponding portions of the other 282 Infringing DP Standards, and, with respect to the standalone use of Accused Lenovo Laptops, as described above. Lenovo's affirmative acts of inducement included, without limitation and with specific intent to encourage the infringement due to the fact that, as discussed above, Lenovo had

knowledge of the 282 Patent and that its products infringed the 282 Patent, knowingly inducing consumers to use the Accused Lenovo Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying such Accused Lenovo Products to customers within the United States and instructing and encouraging such customers how to use the Accused Lenovo Products in the ordinary, customary, and intended way, which Lenovo knew or should have known infringed at least claim 1 of the 282 Patent. Lenovo's affirmative acts of inducement further included, without limitation and with specific intent to encourage the infringement due to the fact that, as discussed above, Lenovo had knowledge of the 282 Patent and that its products infringed the 282 Patent, any one or a combination of encouraging and/or facilitating third-party infringement through the advertisement, marketing, and dissemination of the Accused Lenovo Products and components thereof; including DisplayPort firmware and/or drivers; and creating, publishing, and/or providing sales, promotional, and marketing materials; supporting materials; product manuals; user guides; and/or technical support and information relating to the Accused Lenovo Products and DisplayPort functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from Lenovo's website).

168.    Further and in the alternative, on information and belief, during the term of the 282 Patent, and with knowledge of the General Video Patents as described above, Lenovo contributed to the infringement of at least claim 1 of the 282 Patent in violation of 35 U.S.C. § 271(c). Users and customers of the Accused Lenovo Products directly infringed at least claim 1 of the 282 Patent when they used the Accused Lenovo Products for such products' ordinary, customary, and intended use, and, in particular, in the directly infringing manner described in Appendix D hereto with respect to DP v1.2, as described in the corresponding portions of the other 282 Infringing DP

Standards, and, with respect to the standalone use of Accused Lenovo Laptops, as described above. Lenovo's contributory infringement included, without limitation, Lenovo's sale and provision of Accused Lenovo Products, including DisplayPort components thereof, to customers in the United States for use in practicing at least claim 1 of the 282 Patent, knowing that such products and components were material to practicing the claimed inventions, were not staple articles or commodities of commerce suitable for substantial non-infringing use, and were especially made or especially adapted for use in an infringement of the 282 Patent. Specifically, as discussed above, Lenovo sold the Accused Lenovo Products and components thereof to customers knowing that the customers' operation of such products directly infringed at least claim 1 of the 282 Patent when used for their normal and intended purpose, and, in particular, when used in the directly infringing manner described in Appendix D hereto with respect to DP v1.2, as described in the corresponding portions of the other 282 Infringing DP Standards, and, with respect to the standalone use of Accused Lenovo Laptops, as described above. The Accused Lenovo Products and DisplayPort components thereof were made for the specific purpose of operating as described in Appendix D hereto with respect to DP v1.2, as described in such corresponding portions of the other 282 Infringing DP Standards, and, with respect to the standalone use of Accused Lenovo Laptops, as described above, and have no substantial non-infringing use.

169. Thus, as discussed above, in addition to their acts of direct infringement as described throughout this Complaint, the Lenovo Defendants have also committed acts of indirect infringers at least by manufacturing products for the U.S. market, and/or directing them to the U.S. market, knowing they will cause infringement through import, sale, and/or use in United States. *See, e.g., Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012) ("[W]here a foreign party, with the requisite knowledge and intent, employs extraterritorial means to actively induce

acts of direct infringement that occur within the United States, such conduct is not categorically exempt from redress under § 271(b).").

170. On information and belief, and as discussed above, as of March 1, 2018, and no later than March 16, 2018, Lenovo knew of the 282 Patent and MPEG LA's assertion that Lenovo was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 39 hereto, MPEG LA's 3/16/2015 notice letter to Lenovo), ███████████████ (Exs. 49 and 50 hereto, ███████████████ ███████████████████████████████████████████ ████████████████████████████████████████████.

171. On information and belief, and as discussed above, to the extent Lenovo was unaware of the 282 Patent and MPEG LA's assertion that the 282 Patent is essential to the 282 Infringing DP Standards and Lenovo, as an implementer of the 282 Infringing DP Standards and, thus, an infringer of the 282 Patent, required a license under the DP License as of, or within a reasonable time after, ████████, then Lenovo should have known of the 282 Patent and MPEG LA's assertion by then but was willfully blind to the existence of the 282 Patent and its infringement of the same. Further, Lenovo persisted with its infringement of the 282 Patent despite the clear additional notice and knowledge General Video provided of that infringement through the E.D. Tex. Complaint and the E.D. Tex. Initial Contentions. For at least the foregoing reasons, Lenovo's infringement of the 282 Patent has been, and continues to be, willful and deliberate.

## COUNT IV: THE 437 PATENT

172. Appendix E hereto is an exemplary patent claim chart that details how the invention of claim 41 of the 437 Patent is essential to implementations of DP v1.2, relative to encoding data for transmission over a serial link. The versions of the DisplayPort and eDP standards listed below

include features that are either identical to, or materially the same as, the features of DP v1.2 shown to infringe claim 41 of the 437 Patent in Appendix E hereto. As such, these versions of the DisplayPort and eDP standards also infringe the 437 Patent:

- DP v1.0, introduced May 3, 2006;
- DP v1.1, introduced April 2, 2007;
- DP v1.1a, introduced January 11, 2008;
- DP v1.2a, introduced January 2013;
- DP v1.3, introduced September 15, 2014;
- DP v1.4, introduced March 1, 2016;
- DP v1.4a, introduced April 2018;
- DP v2.0, introduced June 26, 2019; and
- DP v2.1, introduced October 17, 2022

- eDP v1.1, introduced October 2009;
- eDP v1.2, introduced May 2010;
- eDP v1.3, introduced February 2011;
- eDP v1.4, introduced February 2013;
- eDP v1.4a, introduced February 2015;
- eDP v1.4b, introduced October 2015; and
- eDP v1.5, introduced October 2021

(collectively with DP v1.2, the "437 Infringing DP Standards"). Thus, whoever used one or more products to perform the methods described in Appendix E hereto with respect to DP v1.2, and described in the corresponding portions of the other 437 Infringing DP Standards, during the term of the 437 Patent, directly infringed claim 41 of the 437 Patent in violation of 35 U.S.C. § 271(a). *See, e.g, Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

173.   On information and belief, during the term of the 437 Patent, Lenovo directly infringed claim 41 of the 437 Patent by using Accused Lenovo Products in a manner that complied

with the description provided in Appendix E hereto with respect to DP v1.2, and the descriptions provided in the corresponding portions of the other 437 Infringing DP Standards.

174. By way of example and not limitation, and on information and belief, during the term of the 282 Patent, Lenovo employees used the Accused Lenovo Products in such a directly infringing manner when transmitting data from Accused Lenovo Laptops, Accused Lenovo Desktops, and any desktop computers with installed Accused Lenovo Graphics Cards[105] via a DisplayPort connection to Accused Lenovo Monitors or other non-Lenovo monitors. On its website, Lenovo explains:

> Displayport and HDMI are two popular video and audio interfaces used to connect devices like computers, monitors, televisions (TVs), and gaming consoles. They both serve the same purpose of *transmitting high-quality audio and video signals . . .* both Displayport and HDMI can *transmit audio signals alongside video*. This means you can connect your computer or other audio-video source to a monitor or television (TV) and have the sound play through the display's built-in speakers or an external audio system. Just make sure the connected devices support audio over the respective interface.

https://www.lenovo.com/us/en/glossary/displayport-vs-hdmi/ (emphasis added). As explained above, Lenovo advertises all the Accused Lenovo Laptops, Desktops, Graphics Cards, and Monitors as supporting DisplayPort media connectivity. By way of further example and not limitation, and on information and belief, during the term of the 437 Patent, Lenovo employees and Lenovo customers also used Accused Lenovo Laptops in a directly infringing manner during any operation of an Accused Lenovo Laptop because such operation complied with the description provided in Appendix E hereto with respect to DP v1.2, and the descriptions provided in the corresponding portions of the other 437 Infringing DP Standards, including the corresponding

---

[105] Relative to the Accused Lenovo Graphics Cards, the alleged direct infringement of method claim 41 of the 437 Patent by Lenovo and Lenovo customers in this Count IV presumes performance of the claimed methods by Lenovo's and Lenovo's customers' use, in part, of computers having installed Accused Lenovo Graphics Cards.

portions of the eDP subset of such 437 Infringing DP Standards, by facilitating the encoding of data for transmission over a serial link between such Accused Lenovo Laptop's iGPU/dGPU and such Accused Lenovo Laptop's screen/display as recited in claim 41 of the 437 Patent. The independent ground for direct infringement by standalone use of an Accused Lenovo Laptop described in the preceding sentence applies in addition to, and irrespective of, the several examples of direct infringement by Lenovo employees and Lenovo customers described below.

175.    By way of example and not limitation, and on information and belief, during the term of the 437 Patent, Lenovo employees used Accused Lenovo Products in a manner that directly infringed claim 41 of the 437 Patent as described above, as described in Appendix E hereto with respect to DP v1.2, and as described in the corresponding portions of the other 437 Infringing DP Standards, when operating Accused Lenovo Laptops, Accused Lenovo Desktops, and Accused Lenovo Graphics Cards connected to Accused Lenovo Monitors via a DisplayPort connection at, between, and/or among Lenovo's offices and facilities in the United States. *See, e.g.,* https://www.lenovo.com/us/en/about/locations/ (identifying 8 Lenovo office locations in the United States). On information and belief, one of numerous examples of such directly infringing uses occurred when Lenovo employees participated in video conferences or Voice over Internet Protocol (VoIP) calls using an Accused Lenovo Laptop, Accused Lenovo Desktop, Accused Motorola Product, or Accused Lenovo Graphics Card connected to an Accused Lenovo Monitor as described above.

176.    On information and belief, another example of Lenovo employees having used Accused Lenovo Products in a manner that directly infringes claim 41 of the 437 Patent is when Lenovo employees streamed or played recorded or real-time video content using an Accused Lenovo Laptop, Accused Lenovo Desktop, or Accused Lenovo Graphics Card connected to an

Accused Lenovo Monitor via a DisplayPort connection as described above. On information and belief, one of numerous examples of such directly infringing uses was when Lenovo employees played on an Accused Lenovo Laptop, Accused Lenovo Desktop, Accused Motorola Product, or Accused Lenovo Graphics Card connected to an Accused Lenovo Monitor as described above any of the hundreds of videos with audio content that Lenovo itself makes available for streaming from its online Lenovo Technical Support. *See* https://support.lenovo.com/us/en.

177.    On information and belief, during the term of the 437 Patent, Lenovo employees also used Accused Lenovo Products in a manner that directly infringes claim 41 of the 437 Patent as described above, as described in Appendix E hereto with respect to DP v1.2, and as described in the corresponding portions of the other 437 Infringing DP Standards with respect to the same claims, when they demonstrated Accused Lenovo Products to actual and potential customers of Accused Lenovo Products at trade shows, during product demonstrations, and – generally – as part of Lenovo's marketing and sales operations. By way of example and not limitation, Lenovo attended and exhibited its products at the annual Consumer Electronics Show (CES) trade show. By way of further example and not limitation, the "Lenovo Legion Go" – an Accused Lenovo Laptop (see Appendix A) was honored as a "CES 2024 Innovation Award Product" at the 2023 CES, held in Las Vegas, Nevada, January 9 to January 12, 2024. https://www.ces.tech/innovation-awards/honorees/2024/honorees/l/lenovo-legion-go.aspx. The Lenovo Legion Go included at least two DisplayPort 1.4 media connectivity ports (see e.g., https://www.lenovo.com/us/en/p/hand held/legion-go/len106g0001).

178.    By way of further example and not limitation, the "ThinkPad X1 Fold," – an Accused Lenovo Laptop (see Appendix A) –, was honored as a "CES 2023 Innovation Award Product" at the 2023 CES, held in Las Vegas, Nevada, January 5 to January 8, 2023.

https://www.ces.tech/innovation-awards/honorees/2023/honorees/t/thinkpad-x1-fold.aspx.   The ThinkPad X1 Fold 16 Gen 1 included at least three DisplayPort 1.4a media connectivity ports. (*See e.g.*, https://psref.lenovo.com/syspool/Sys/PDF/ThinkPad/ThinkPad_X1_Fold_16_Gen_1/ThinkPad_X1_Fold_16_Gen_1_Spec.pdf ). During the term of the 437 Patent, Lenovo attended CES 2020, held in Las Vegas January 7 to 10, 2020. *See, e.g.,* https://news.lenovo.com/pressroom/press-releases/lenovo-breaks-barriers-with-new-consumer-technology-unveiled-at-ces-2020-2/. Among the numerous products Lenovo showcased at CES 2020 was its Lenovo IdeaPad Flex 5 Chromebook which featured two "USB-C 3.2 Gen 1 (support data transfer, Power Delivery 2.0 and DisplayPort™ 1.2)" media connectivity ports. *See, e.g.,* https://psref.lenovo.com/syspool/Sys/PDF/IdeaPad/IdeaPad_Flex_5_CB_13IML05/IdeaPad_Flex_5_CB_13IML05_Spec.PDF.

179.   On information and belief, during the term of the 437 Patent, Lenovo employees also used Accused Lenovo Products in a manner that directly infringed claim 41 of the 437 Patent as described above, as described in Appendix E hereto with respect to DP v1.2, and as described in the corresponding portions of the 437 Infringing DP Standards, when providing customer support to Lenovo's actual and potential customers. By way of example and not limitation, and on information and belief, during the term of the 437 Patent, Lenovo employees used Accused Lenovo Products in such a directly infringing manner when troubleshooting and resolving technical issues for Lenovo's actual and potential customers. In this regard, Lenovo offers robust technical support services, which services include telephone support, online support, and online support libraries and video libraries that feature articles, tutorials, and videos to assist in troubleshooting and maintaining Accused Lenovo Products. *See, e.g.,* https://www.lenovo.com/us/en/contact/; *see also* https://support.lenovo.com/us/en.

180.     By way of further example and not limitation, and on information and belief, during the term of the 437 Patent, Lenovo employees used and controlled Lenovo customers' Accused Lenovo Products in the directly infringing manner described above, described in Appendix E hereto with respect to DP v1.2, and described in the corresponding portions of the other 282 Infringing DP Standards, when providing onsite assistance for customers' Accused Lenovo Products. Lenovo's Premium Care Plus, Premium Care, and Legion Ultimate Support provide "Onsite Repair Next Business Day . . . [i]f the issue can't be solved remotely, an onsite technician will be there within one business day." https://support.lenovo.com/us/en/warranty-upgrade-and-services/.

181.     On information and belief, during the term of the 437 Patent, Lenovo employees also used Accused Lenovo Products in the directly infringing manner described above, described in Appendix E hereto with respect to DP v1.2, and described in the corresponding portions of the other 437 Infringing DP Standards, when they tested the Accused Lenovo Products to confirm compliance with the portions of DP v1.2 described in Appendix E hereto and/or the corresponding portions of the other 437 Infringing DP Standards. On information and belief, Lenovo employees conducted at least some of the testing described in this paragraph using one or more of the "DisplayPort Authorized Test Tools" made available via links on VESA's website. *See, e.g.,* https://vesa.org/authorized-test-tools/.

182.     Further, and on information and belief, during the term of the 437 Patent, and with knowledge of the General Video Patents and the fact that its products infringed the General Video Patents as described above, Lenovo actively induced infringement of claim 41 of the 437 Patent in violation of 35 U.S.C. § 271(b). Users and customers of the Accused Lenovo Products directly infringed claim 41 of the 437 Patent when they used the Accused Lenovo Products for such

products' ordinary, customary, and intended use, including by operation as described in Appendix D hereto with respect to DP v1.2, as described in the corresponding portions of the other 437 Infringing DP Standards, and, with respect to the standalone use of Accused Lenovo Laptops, as described above. Lenovo's affirmative acts of inducement included, without limitation and with specific intent to encourage the infringement due to the fact that, as discussed above, Lenovo had knowledge of the 437 Patent and that its products infringed the 437 Patent, knowingly inducing consumers to use the Accused Lenovo Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying such Accused Lenovo Products to customers within the United States and instructing and encouraging such customers how to use the Accused Lenovo Products in the ordinary, customary, and intended way, which, as discussed above, Lenovo knew or should have know infringed claim 41 of the 437 Patent. Lenovo's affirmative acts of inducement further included, without limitation and with specific intent to encourage the infringement due to the fact that, as discussed above, Lenovo had knowledge of the 437 Patent and that its products infringed the 437 Patent, any one or a combination of encouraging and/or facilitating third-party infringement through the advertisement, marketing, and dissemination of the Accused Lenovo Products and components thereof; including DisplayPort firmware and/or drivers; and creating, publishing, and/or providing sales, promotional, and marketing materials; supporting materials; product manuals; user guides; and/or technical support and information relating to the Accused Lenovo Products and DisplayPort functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from Lenovo's website).

183. Further and in the alternative, on information and belief, during the term of the 437 Patent, and with knowledge of the General Video Patents as described above, Lenovo contributed

to the infringement of claim 41 of the 437 Patent in violation of 35 U.S.C. § 271(c). Users and customers of the Accused Lenovo Products directly infringed claim 41 of the 437 Patent when they use the Accused Lenovo Products for such products' ordinary, customary, and intended use, and, in particular, in the directly infringing manner described in Appendix D hereto with respect to DP v1.2, as described in the corresponding portions of the other 437 Infringing DP Standards, and, with respect to the standalone use of Accused Lenovo Laptops, as described above. Lenovo's contributory infringement included, without limitation, Lenovo's sale and provision of Accused Lenovo Products, including DisplayPort components thereof, to customers in the United States for use in practicing claim 41 of the 437 Patent, knowing that such products and components were material to practicing the claimed inventions, were not staple articles or commodities of commerce suitable for substantial non-infringing use, and were especially made or especially adapted for use in an infringement of the 437 Patent. Specifically, as discussed above, Lenovo sold the Accused Lenovo Products and components thereof to customers knowing that the customers' operation of such products directly infringed claim 41 of the 437 Patent when used for their normal and intended purpose, and, in particular, when used in the directly infringing manner described in Appendix D hereto with respect to DP v1.2, as described in the corresponding portions of the other 437 Infringing DP Standards, and, with respect to the standalone use of Accused Lenovo Laptops, as described above. The Accused Lenovo Products and DisplayPort components thereof were made for the specific purpose of operating as described in Appendix D hereto with respect to DP v1.2, as described in such corresponding portions of the other 437 Infringing DP Standards, and, with respect to the standalone use of Accused Lenovo Laptops, as described above, and have no substantial non-infringing use.

184.    Thus, as discussed above, in addition to their acts of direct infringement as described throughout this Complaint, the Lenovo Defendants have also committed acts of indirect infringement at least by manufacturing products for the U.S. market, and/or directing them to the U.S. market, knowing they will cause infringement through import, sale, and/or use in United States. *See, e.g., Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012) ("[W]here a foreign party, with the requisite knowledge and intent, employs extraterritorial means to actively induce acts of direct infringement that occur within the United States, such conduct is not categorically exempt from redress under § 271(b).").

185.    On information and belief, and as discussed above, as of June 1, 2021, Lenovo knew of the 437 Patent and MPEG LA's assertion that Lenovo was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 39 hereto, MPEG LA's 3/16/2015 notice letter to Lenovo), including the 437 Patent (Ex. 43 hereto, DisplayPort Attachment 1, revised 6/1/2021 (providing notice of addition to the DP License of the 437 Patent and other patents essential to DisplayPort standards)).

186.    On information and belief, and as discussed above,  to the extent Lenovo was unaware of the 437 Patent and MPEG LA's assertion that the 437 Patent is essential to the 437 Infringing DP Standards and Lenovo, as an implementer of the 437 Infringing DP Standards and, thus, an infringer of the 437 Patent, required a license under the DP License as of, or within a reasonable time after, June 1, 2021, then Lenovo should have known of the 437 Patent and MPEG LA's assertion by then but was willfully blind to the existence of the 437 Patent and its infringement of the same. For at least the foregoing reasons, Lenovo's infringement of the 437 Patent has been, and continues to be, willful and deliberate.

**COUNT V: THE 010 PATENT**

187.    Appendix F hereto is an exemplary patent claim chart that details how the inventions of claims 1 and 12 of the 010 Patent are essential to implementations of DP v1.2, relative to the transport of stereoscopic image data over a display interface. The versions of the DisplayPort and eDP standards listed below include features that are either identical to, or materially the same as, the features of DP v1.2 shown to infringe claims 1 and 12 of the 010 Patent in Appendix F hereto. As such, these versions of the DisplayPort and eDP standards also infringe the 010 Patent:

- DP v1.2a, introduced January 2013;

- DP v1.3, introduced September 15, 2014;

- DP v1.4, introduced March 1, 2016;

- DP v1.4a, introduced April 2018;

- DP v2.0, introduced June 26, 2019; and

- DP v2.1, introduced October 17, 2022

- eDP v1.2, introduced May 2010;

- eDP v1.3, introduced February 2011;

- eDP v1.4, introduced February 2013;

- eDP v1.4a, introduced February 2015;

- eDP v1.4b, introduced October 2015; and

- eDP v1.5, introduced October 2021

(collectively with DP v1.2, the "010 Infringing DP Standards"). Thus, whoever makes, uses, offers to sell, or sells any product that complies with, implements, and/or embodies the portions of DP v1.2 described in Appendix F hereto, and/or complies with, implements, and/or embodies the corresponding portions of the other 010 Infringing DP Standards, during the term of the 010 Patent, directly infringes claims 1 and 12 of that patent in violation of 35 U.S.C. § 271(a). *See, e.g, Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance

with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

188.    Lenovo directly infringes at least claims 1 and 12 of the 010 Patent by making, using, selling, and/or offering to sell in, and/or importing into, the United States Accused Lenovo Products that comply with, implement, and/or embody the portions of DP v1.2 as described in Appendix F hereto, and that comply with, implement, and/or embody the corresponding portions of the other 010 Infringing DP Standards.

189.    By way of example and not limitation, and on information and belief, Lenovo directly infringes at least claims 1 and 12 of the 010 Patent by selling and offering to sell Accused Lenovo Products such as Accused Lenovo Laptops, Accused Lenovo Desktops, and Accused Lenovo Graphics Cards that include a digital display interface part that supports a digital display interface between source devices, such as Accused Lenovo Laptops, Accused Lenovo Desktops, and Accused Lenovo Graphics Cards, on the one hand, and sink devices, such as computer monitors or displays, on the other hand, where such interface part is operable in the infringing manner described in Appendix F hereto with respect to DP v1.2, and described in the corresponding portions of the other 010 Infringing DP Standards. *See, e.g., Sorrell Holdings, LLC v. Infinity Headwear & Apparel, LLC*, 2024 WL 413432, at *3 (Fed. Cir. Feb. 5, 2024) ("For an 'accused device[] to be infringing, [it] need only be capable operating' in the infringing manner.") (bracketed text in original) (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991)).

190.    Further, and on information and belief, with knowledge of the General Video Patents and the fact that its products infringe the General Video Patents as described above, Lenovo has been actively inducing, and continues to actively induce, infringement of at least claims 1 and

12 of the 010 Patent in violation of 35 U.S.C. § 271(b). Users and customers of the Accused Lenovo Products have directly infringed and continue to directly infringe at least claims 1 and 12 of the 010 Patent when they use the Accused Lenovo Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix F hereto with respect to DP v1.2 as to those claims, and as described in the corresponding portions of the other 010 Infringing DP Standards with respect to the same claims. Lenovo's affirmative acts of inducement have included, and continue to include, without limitation and with specific intent to encourage the infringement due to the fact that, a discussed above, Lenovo had knowledge of the 010 Patent and that its products infringed the 010 Patent, knowingly inducing consumers to use the Accused Lenovo Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying such Accused Lenovo Products to customers within the United States and instructing and encouraging such customers how to use the Accused Lenovo Products in the ordinary, customary, and intended way, which, as discussed above, Lenovo knows or should know infringes at least claims 1 and 12 of the 010 Patent. Lenovo's affirmative acts of inducement have further included and continue to include, without limitation and with specific intent to encourage the infringement due to the fact that, as discussed above, Lenovo had knowledge of the 010 Patent and that its products infringed the 010 Patent, any one or a combination of encouraging and/or facilitating third-party infringement through the advertisement, marketing, and dissemination of the Accused Lenovo Products and components thereof, including DisplayPort firmware and/or drivers; and creating, publishing, and/or providing sales, promotional, and marketing materials; supporting materials; product manuals; user guides; and/or technical support and information relating to the Accused Lenovo Products and DisplayPort

functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from Lenovo's website).

191.    Further and in the alternative, on information and belief, with knowledge of the General Video Patents as described above, Lenovo has been contributing to, and continues to contribute to, the infringement of at least claims 1 and 12 of the 010 Patent in violation of 35 U.S.C. § 271(c). Users and customers of the Accused Lenovo Products have directly infringed and continue to directly infringe at least claims 1 and 12 of the 010 Patent when they use the Accused Lenovo Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix F hereto with respect to DP v1.2 as to those claims, and as described in the corresponding portions of the other 010 Infringing DP Standards with respect to the same claims. Lenovo's contributory infringement has included and continues to include, without limitation, Lenovo's sale and provision of Accused Lenovo Products, including DisplayPort components thereof, to customers in the United States for use in practicing at least claims 1 and 12 of the 010 Patent, knowing that such products and components are material to practicing the claimed inventions, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are especially made or especially adapted for use in an infringement of the 010 Patent. Specifically, as discussed above, Lenovo sold the Accused Lenovo Products to customers knowing that the customers' operation of such products directly infringes at least claims 1 and 12 of the 010 Patent when used for their normal and intended purpose, including by operation as described in Appendix F hereto with respect to DP v1.2 as to those claims, and as described in the corresponding portions of the other 010 Infringing DP Standards with respect to the same claims. The Accused Lenovo Products and DisplayPort components thereof are made for the specific purpose of operating as described in Appendix F hereto with respect to DP v1.2, and as

described in such corresponding portions of the other 010 Infringing DP Standards, and have no substantial non-infringing use.

192.    Thus, as discussed above, in addition to their acts of direct infringement as described throughout this Complaint, the Lenovo Defendants have also committed acts of indirect infringement at least by manufacturing products for the U.S. market, and/or directing them to the U.S. market, knowing they will cause infringement through import, sale, and/or use in United States. *See, e.g., Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012) ("[W]here a foreign party, with the requisite knowledge and intent, employs extraterritorial means to actively induce acts of direct infringement that occur within the United States, such conduct is not categorically exempt from redress under § 271(b).").

193.    On information and belief, and as discussed above, at least as of March 1, 2016, Lenovo knew of the 010 Patent and MPEG LA's assertion that Lenovo was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 39 hereto, MPEG LA's 3/16/2015 notice letter to Lenovo), ███████ ██████████ (Exs. 46 and 47 hereto, ███████████████████████ ████████████████████████████████████████████████ ████████ .

194.    On information and belief, and as discussed above, to the extent Lenovo was unaware of the 010 Patent and MPEG LA's assertion that the 010 Patent is essential to the 010 Infringing DP Standards and Lenovo, as an implementer of the 010 Infringing DP Standards and, thus, an infringer of the 010 Patent, required a license under the DP License as of, or within a reasonable time after ███████████ , then Lenovo should have known of the 010 Patent and MPEG LA's assertion by then but was willfully blind to the existence of the 010 Patent and its

infringement of the same. Further, Lenovo has persisted with its infringement of the 010 Patent despite the clear additional notice and knowledge General Video provided of that infringement through the E.D. Tex. Complaint and the E.D. Tex. Initial Contentions. For at least the foregoing reasons, Lenovo's infringement of the 010 Patent has been, and continues to be, willful and deliberate.

195.     By the time of the trial of this case, Lenovo will have known and intended that its continued actions since receiving the notice described above and, additionally, since receiving the notice provided by the E.D. Tex. Complaint, the E.D. Tex. Initial Contentions, and this Complaint, would infringe at least claims 1 and 12 of the 010 Patent. For this reason as well, Lenovo's infringement of the 010 Patent has been, and continues to be, willful and deliberate.

## COUNT VI: THE 786 PATENT

196.     Appendix G hereto is an exemplary patent claim chart that details how the invention of claim 1 of the 786 Patent is essential to implementations of DP v1.2, with respect to the transport of stereoscopic image data over a display interface. The versions of the DisplayPort and eDP standards listed below include features that are either identical to, or materially the same as, the features of DP v1.2 shown to infringe claim 1 of the 786 Patent in Appendix G hereto. As such, these versions of the DisplayPort and eDP standards also infringe the 786 Patent:

- DP v1.2a, introduced January 2013;
- DP v1.3, introduced September 15, 2014;
- DP v1.4, introduced March 1, 2016;
- DP v1.4a, introduced April 2018;
- DP v2.0, introduced June 26, 2019; and

- eDP v1.2, introduced May 2010;
- eDP v1.3, introduced February 2011;
- eDP v1.4, introduced February 2013;
- eDP v1.4a, introduced February 2015;
- eDP v1.4b, introduced October 2015; and
- eDP v1.5, introduced October 2021

- DP v2.1, introduced October 17, 2022

(collectively with DP v1.2, the "786 Infringing DP Standards"). Thus, whoever makes, uses, offers to sell, or sells any product that complies with, implements, and/or embodies the portions of DP v1.2 described in Appendix G hereto, and/or complies with, implements, and/or embodies the corresponding portions of the other 786 Infringing DP Standards, during the term of the 786 Patent, directly infringes claim 1 of that patent in violation of 35 U.S.C. § 271(a). *See, e.g, Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

197. Lenovo directly infringes at least claim 1 of the 786 Patent by making, using, selling, and/or offering to sell in, and/or importing into, the United States Accused Lenovo Products that comply with, implement, and embody the portions of DP v1.2 as described in Appendix G hereto, and that comply with, implement, and embody the corresponding portions of the other 786 Infringing DP Standards.

198. By way of example and not limitation, and on information and belief, Lenovo directly infringes at least claim 1 of the 786 Patent by selling and offering to sell Accused Lenovo Products such as Accused Lenovo Laptops, Accused Lenovo Desktops, and Accused Lenovo Graphics Cards that include a digital display interface part that supports a digital display interface between source devices, such as Accused Lenovo Laptops, Accused Lenovo Desktops, and Accused Lenovo Graphics Cards, on the one hand, and sink devices, such as computer monitors or displays, on the other hand, where such interface part is operable in the infringing manner described in Appendix G hereto with respect to DP v1.2, and described in the corresponding

portions of the other 786 Infringing DP Standards. *See, e.g., Sorrell Holdings, LLC v. Infinity Headwear & Apparel, LLC*, 2024 WL 413432, at *3 (Fed. Cir. Feb. 5, 2024) ("For an 'accused device[] to be infringing, [it] need only be capable operating' in the infringing manner.") (bracketed text in original) (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991)).

199.    Further, and on information and belief, with knowledge of the General Video Patents and the fact that its products infringe the General Video Patents as described above, Lenovo has been actively inducing, and continues to actively induce, infringement of at least claim 1 of the 786 Patent in violation of 35 U.S.C. § 271(b). Users and customers of the Accused Lenovo Products have directly infringed and continue to directly infringe at least claim 1 of the 786 Patent when they use the Accused Lenovo Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix G hereto with respect to DP v1.2 as to that claim, and as described in the corresponding portions of the other 786 Infringing DP Standards with respect to the same claim. Lenovo's affirmative acts of inducement have included, and continue to include, without limitation and with specific intent to encourage the infringement due to the fact that, as discussed above, Lenovo had knowledge of the 786 Patent and that its products infringed the 786 Patent, knowingly inducing consumers to use the Accused Lenovo Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying such Accused Lenovo Products to customers within the United States and instructing and encouraging such customers how to use the Accused Lenovo Products in the ordinary, customary, and intended way, which, as discussed above, Lenovo knows or should know infringes at least claim 1 of the 786 Patent. Lenovo's affirmative acts of inducement have further included and continue to include, without limitation and with specific intent to encourage the

infringement due to the fact that, as discussed above, Lenovo had knowledge of the 786 Patent and that its products infringed the 786 Patent, any one or a combination of encouraging and/or facilitating third-party infringement through the advertisement, marketing, and dissemination of the Accused Lenovo Products and components thereof, including DisplayPort firmware and/or drivers; and creating, publishing, and/or providing sales, promotional, and marketing materials; supporting materials; product manuals; user guides; and/or technical support and information relating to the Accused Lenovo Products and DisplayPort functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from Lenovo's website).

200.    Further and in the alternative, on information and belief, with knowledge of the General Video Patents as described above, Lenovo has been contributing to, and continues to contribute to, the infringement of at least claim 1 of the 786 Patent in violation of 35 U.S.C. § 271(c). Users and customers of the Accused Lenovo Products have directly infringed and continue to directly infringe at least claim 1 of the 786 Patent when they use the Accused Lenovo Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix G hereto with respect to DP v1.2 as to that claim, and as described in the corresponding portions of the other 786 Infringing DP Standards with respect to the same claim. Lenovo's contributory infringement has included and continues to include, without limitation, Lenovo's sale and provision of Accused Lenovo Products, including DisplayPort components thereof, to customers in the United States for use in practicing at least claim 1 of the 786 Patent, knowing that such products and components are material to practicing the claimed inventions, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are especially made or especially adapted for use in an infringement of the 786 Patent. Specifically, Lenovo sold the Accused Lenovo Products to customers knowing that the customers' operation of such products

directly infringes at least claim 1 of the 786 Patent when used for their normal and intended purpose, including by operation as described in Appendix G hereto with respect to DP v1.2 as to that claim, and as described in the corresponding portions of the other 786 Infringing DP Standards with respect to the same claim. The Accused Lenovo Products and DisplayPort components thereof are made for the specific purpose of operating as described in Appendix G hereto with respect to DP v1.2, and as described in such corresponding portions of the other 786 Infringing DP Standards, and have no substantial non-infringing use.

201. Thus, as discussed above, in addition to their acts of direct infringement as described throughout this Complaint, the Lenovo Defendants have also committed acts of indirect infringement at least by manufacturing products for the U.S. market, and/or directing them to the U.S. market, knowing they will cause infringement through import, sale, and/or use in United States. *See, e.g., Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012) ("[W]here a foreign party, with the requisite knowledge and intent, employs extraterritorial means to actively induce acts of direct infringement that occur within the United States, such conduct is not categorically exempt from redress under § 271(b).").

202. On information and belief, and as discussed above, as of June 1, 2024, Lenovo knew of the 786 Patent and MPEG LA's assertion that Lenovo was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 39 hereto, MPEG LA's 3/16/2015 notice letter to Lenovo), including the 786 Patent (Ex. 44 hereto, DisplayPort Attachment 1, revised 6/1/2024 (providing notice of addition of the 786 Patent to DP License)). Further, on information and belief, the notice and knowledge of infringement provided to Lenovo for the 010 Patent, as described above, also provided Lenovo

with notice and knowledge of its infringement of the 786 Patent because the 786 Patent is a child of 010 Patent.

203.    On information and belief, and as discussed above, to the extent Lenovo was unaware of the 786 Patent and MPEG LA's assertion that the 786 Patent is essential to the 786 Infringing DP Standards and Lenovo, as an implementer of the 786 Infringing DP Standards and, thus, an infringer of the 786 Patent, required a license under the DP License as of, or within a reasonable time after June 1, 2024, then Lenovo should have known of the 786 Patent and MPEG LA's assertion by then but was willfully blind to the existence of the 786 Patent and its infringement of the same. Further, Lenovo has persisted with its infringement of the 786 Patent despite the clear additional notice and knowledge General Video provided of that infringement through the E.D. Tex. Complaint and the E.D. Tex. Initial Contentions. For at least the foregoing reasons, Lenovo's infringement of the 786 Patent has been, and continues to be, willful and deliberate.

204.    By the time of the trial of this case, Lenovo will have known and intended that its continued actions since receiving the notice described above and, additionally, since receiving the notice provided by the E.D. Tex. Complaint, the E.D. Tex. Initial Contentions, and this Complaint, would infringe at least claim 1 of the 786 Patent. For this reason as well, Lenovo's infringement of the 786 Patent has been, and continues to be, willful and deliberate.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff General Video respectfully requests that this Court:

A.    Enter judgment in favor of General Video that each of the General Video Patents is valid and enforceable;

B.      Enter judgment in favor of General Video that Defendants have infringed each of the General Video Patents, continue to infringe the 010 and 786 Patents, and that such infringement is willful;

C.      Award General Video all monetary relief available under the laws of the United States, including but not limited to 35 U.S.C. § 284;

D.      Order Defendants to pay ongoing royalties in an amount to be determined for any continuing infringement after the date of judgment;

E.      Declare this case exceptional and award General Video its reasonable attorney fees under 35 U.S.C. § 285;

F.      Enter judgment awarding General Video its reasonable costs and expenses along with prejudgment and post-judgment interest as allowed by law;

G.      Enjoin Defendants and their subsidiaries, and their officers, agents, servants, employees, and all persons in active concert with any of the foregoing from further infringement; and

H.      Grant General Video all such other relief as the Court deems just and reasonable.

## JURY DEMAND

General Video demands a jury trial on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: December 27, 2025

Respectfully submitted,


*/s/ Matthew G. McAndrews*

Peter J. McAndrews
pmcandrews@mcandrews-ip.com
Matthew G. McAndrews
mmcandrews@mcandrews-ip.com
McANDREWS, HELD & MALLOY, LTD.
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

Geoff Culbertson
gpc@texarkanalaw.com
Kelly Tidwell
kbt@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233

*Attorneys for Plaintiff,*
GENERAL VIDEO, LLC